978 F.2d 1334
 CATAWBA INDIAN TRIBE OF SOUTH CAROLINA, also known as the
Catawba Nation of South America, Plaintiff-Appellant,
v.
STATE OF SOUTH CAROLINA, Richard Riley, as Governor of the
State of South Carolina; County of Lancaster, and its
county council consisting of Francis L. Bell, as Chairman,
Fred E. Plyler, Eldridge Emory, Robert L. Mobley, Barry L.
Mobley, L. Eugene Hudson, Lindsay Pettus, City of Rock Hill,
J. Emmett Jerome, as Mayor, and its City Council consisting
of Melford A. Wilson, Elizabeth D. Rhea, Maxine Gill,
Winston Searles, A. Douglas Echols, Frank W. Berry, Sr.,
Bowater North American Corporation of America, Catawba
Timber Co., Celanese Corporation of America, Citizens and
Southern National Bank of South Carolina, Cresent Land &
Timber Corp., Duke Power Company, Flint Realty and
Construction Company, Herald Publishing Company, Home
Federal Savings and Loan Association, Rock Hill Printing &
Finishing Company, Roddey Estates, Inc., Southern Railway
Company, Springs Mills, Inc., J.P. Stevens & Company, Tega
Cay Associates, Wachovia Bank and Trust Company, Ashe Brick
Company, Church Heritage Village & Missionary Fellowship,
Nisbet Farms, Inc., C.H. Albright, Ned Albright, J.W.
Anderson, Jr., John Marshall Wilkins, II, Jesse G. Anderson,
John Wesley Anderson, David Goode Anderson, W.B. Ardrey,
Jr., Elizabeth Ardrey Grimball, John W. Ardrey, Ardrey
Farms, F.S. Barnes, Jr., W. Watson Barron, Wilson Barron,
Archie B. Carroll, Jr., Hugh William Close, James Bradley,
Francis Lay Springs, Lillian Crandal Close, Francis Allison
Close, Leroy Springs Close, Patricia Close, William Elliot
Close, Hugh William Close, Jr., Robert A. Fewell, W.J.
Harris, Annie F. Harris, T.W. Hutchinson, Hiram Hutchinson,
Jr., J.R. McAlhaney, F.M. Mack, Jr., Arnold F. Marshall,
J.E. Marshall, Jr., C.E. Reid, Jr., Will R. Simpson, John S.
Simpson, Robert F. Simpson, Thomas Brown Snodgrass, Jr.,
John M. Spratt, Marshall E. Walker, Hugh M. White, Jr., John
M. Belk, Jane Nisbet Goode, R.N. Bencher, W.O. Nisbet, III,
Pauline B. Gunter, J. Max Minson, W.A. McCorkle, Mary
McCorkle, William O. Nisbet, Eugenia Nisbet White, Mary
Nisbet Purvis, E.N. Martin, Robert M. Yoder, Defendants-Appellees.
 No. 90-2446.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1992.
Decided Sept. 22, 1992.
 
 Jay Bender, Baker, Barwick, Ravenel & Bender, Columbia, S.C., argued (Don B. Miller, Native American Rights Fund, Boulder, Colo., Robert M. Jones, Rock Hill, S.C., Richard Steele, Union, S.C., for plaintiff-appellant.
 James Linwood Quarles, III, Hale & Dorr, Boston, Mass., Michael John Giese, Leatherwood, Walker, Todd & Mann, P.C., Greenville, S.C., argued. James D. St. Clair, William F. Lee, Hale & Dorr, Boston, Mass., J.D. Todd, Jr., Leatherwood, Walker, Todd & Mann, P.C., Greenville, S.C., John C. Christie, Jr., J. William Hayton, David M. Novak, Bell, Boyd & Lloyd, Washington, D.C., Dan M. Byrd, Jr., Mitchell K. Byrd, Byrd & Byrd, David A. White, Carolyn W. Rogers, Roddey, Carpenter & White, P.A., Rock Hill, S.C., T. Travis Medlock, Atty. Gen., Kenneth P. Woodington, Asst. Atty. Gen., State of S.C., Columbia, S.C., Joseph W. Grier, Jr., J. Cameron Furr, Jr., Grier & Grier, P.A., Charlotte, N.C., W.C. Spencer, Emil W. Wald, Spencer & Spencer, P.A., Rock Hill, S.C., for defendants-appellees.
 Before WIDENER, HALL, MURNAGHAN, SPROUSE, NIEMEYER, and LUTTIG, Circuit Judges, sitting in banc.
 WIDENER, Circuit Judge:
 
 
 1
 The Catawba Indian Tribe appeals from an order of the district court granting summary judgment in favor of certain defendants as to a number of parcels of real estate on the ground that those defendants had established the adverse possession requirements of South Carolina. We affirm in part, reverse in part, and vacate and remand in part.
 
 
 2
 This litigation began when the Tribe filed a complaint and motion to certify a defendant class on October 28, 1980.[1] In the complaint, the Tribe seeks to be declared the owner of approximately 144,000 acres of land that was set aside for the Tribe's benefit in the 1760 Treaty of Pine Tree Hill and the 1763 Treaty of Augusta and to recover trespass damages for the period of its dispossession. The complaint names seventy-six individuals, companies and public entities as defendants and as representatives of a putative defendant class of more than 27,000 persons with an interest in any portion of the lands in question.
 
 
 3
 In 1981, the defendants filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion was based on the effect of the 1959 Catawba Division of Assets Act (Catawba Act), 25 U.S.C. §§ 931-938. The district court treated the motion to dismiss as a Rule 56 motion for summary judgment, granted the defendants' motion and dismissed the case. The court held that the Catawba Act terminated the special relationship that the Tribe had had with the federal government and that the termination of the special federal status of the Tribe made state law apply to it and any claim it might have. Therefore, South Carolina's adverse possession statute began to run against the Tribe's claim on July 1, 1962, the date the Tribe's constitution was revoked pursuant to the Catawba Act. Because South Carolina Code § 15-3-340, the applicable South Carolina statute of limitations, requires actions to recover title or possession to be brought within ten years, the district court held that the Tribe's claims were filed eighteen years after the statute began to run and the claims were barred. The court, while noting that South Carolina does not allow a party to obtain title by adverse possession by "tacking" his period of possession to a predecessor's period of possession (unless the land passes by inheritance), held that South Carolina's non-tacking rule "is not relevant to the defendants' assertion that the plaintiff's claims are barred by the statute of limitations."
 
 
 4
 First a panel of this court and then the court sitting en banc reversed the district court and held that the state statute of limitations does not apply to the Tribe's claim. Catawba Indian Tribe v. South Carolina, 718 F.2d 1291, 1300 (4th Cir.1983), adopted en banc, Catawba Indian Tribe v. South Carolina, 740 F.2d 305 (4th Cir.1984). Because this court held that the state statute of limitations does not apply, we did not reach the question of whether the district court had correctly applied the statute of limitations. The Supreme Court then reversed this court and held that the South Carolina statute of limitations does apply to the Tribe's claim. South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 510-11, 106 S.Ct. 2039, 2046-47, 90 L.Ed.2d 490 (1986). The Court then remanded the case to this court for consideration of the district court's application of the South Carolina statute of limitations to the Tribe's claim. On remand from the Supreme Court, this court held that the Tribe is entitled to invoke the presumption of possession set forth in S.C.Code § 15-67-220; that the Tribe's acknowledgement that it did not actually possess the land within the ten year period specified in S.C.Code § 15-3-340 is not a bar to its claim; and that South Carolina's disallowance of tacking means that the Tribe's claim is only barred as to those persons who held or whose predecessors held the property for ten years without tacking except by inheritance. We summarized our portion of the holding pertinent to the present matter as follows:
 
 
 5
 [S]ections 15-3-340[2] and 15-67-210[3] [of the South Carolina Code] bar the tribe's claim against each person who holds and possesses property that has been held and possessed adversely for 10 years after July 1, 1962, and before October 20, 1980,[4] without tacking except by inheritance, in accordance with South Carolina's tacking doctrine. The statutes of limitations do not bar the tribe's claim against other persons. "Persons" includes joint tenants, tenants in common, partnerships, associations, and corporations.
 
 
 6
 Catawba Indian Tribe v. South Carolina, 865 F.2d 1444, 1456 (4th Cir.), cert. denied, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). Therefore, on remand from this court, the district court was required to determine which claimants met the adverse possession requirements.
 
 
 7
 Forty-six of the named defendants filed a supplemental brief and affidavits in support of their summary judgment motion. The district court entered summary judgment in a series of orders with respect to certain properties for which summary judgment was sought. The court also dismissed twenty-nine defendants from the case as it determined that summary judgment had been granted as to all property in which they had an interest.
 
 Summary Judgment Standard
 
 8
 Our review of summary judgments is de novo. Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 118 (4th Cir.1991). Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.
 
 
 9
 The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. See 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983). However, once the moving party has met its burden under Rule 56(c), the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). See also Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' " and summary judgment is appropriate. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.
 
 I.
 South Carolina Adverse Possession Law
 
 10
 "[C]laim of title by adverse possession require[s] proof of actual, open, notorious, hostile, continuous and exclusive possession by [the claimant], or by one or more persons through whom [the claimant] claim[s], for the full statutory period of ten years, without tacking of possession except by descent cast." Crotwell v. Whitney, 229 S.C. 213, 92 S.E.2d 473, 477 (1956); see S.C.Code § 15-3-340; S.C.Code § 15-67-210. "[T]he burden of proof of adverse possession is on the party relying thereon." Mullis v. Winchester, 237 S.C. 487, 118 S.E.2d 61, 63 (1961). In South Carolina, "[o]rdinarily, adverse possession is a question of fact for the jury and it becomes a question of law only when the evidence is undisputed and susceptible of but one inference." Gardner v. Mozingo, 293 S.C. 23, 358 S.E.2d 390, 392 (1987).
 
 II.
 
 11
 Sufficiency of the Allegations in Claimants' Affidavits
 
 
 12
 The district court made the following rulings with respect to the sufficiency of the affidavits submitted in support of the claimants' motions for summary judgment:
 
 
 13
 A defendant whose uncontroverted affidavit states or shows that he (or his predecessor) has continuously occupied or possessed the property for ten years (without tacking except by inheritance), has treated the property as his own, paid taxes thereon, maintained the property and taken steps to protect it against trespassers or others who might seek to use it or assert any claim to it, has demonstrated adverse possession of the property.
 
 
 14
 A defendant whose uncontroverted affidavit states or shows that he (or his predecessor) continuously occupied or possessed property pursuant to color of title for ten years (without tacking except by inheritance) has demonstrated adverse possession of the property.
 
 
 15
 Mortgage documents are writings sufficient to constitute color of title for purposes of establishing adverse possession.
 
 
 16
 Timber growing or farming is sufficient occupation or possession of the property to establish adverse possession.
 
 
 17
 A deed to a husband serves as color of title for his wife if their marriage took place while Dower rights still attached to all lands of which a husband was seized during coverture.
 
 
 18
 The Tribe argues that the requirements set forth by the district court are insufficient because they do not require allegations of specific acts of possession. They argue that any affidavits which fail to set forth specific acts of possession are insufficient as a matter of law to meet the requirements of adverse possession.
 
 
 19
 We are of opinion that a claimant who produces affidavits or other sufficient documents establishing without contradiction in fact that he or a predecessor held the record title to the property, possessed, occupied, or held the property, paid taxes on the property, and took steps to protect the property from trespassers for the requisite ten-year period without tacking except by descent, has met his burden under Rule 56(c) of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Therefore, in those cases where the claimant has so met his burden, to avoid summary judgment, the Tribe, by affidavit or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.
 
 
 20
 "As a general rule, the law presumes that the exclusive possession of land by one who is a stranger to the holder of the legal title is adverse." Mullis, 118 S.E.2d at 66. In this court's earlier decision, we determined that if the Tribe held Indian title to the property in question in 1962, then it held the legal title at that time. 865 F.2d 1444, 1451 (4th Cir.1989). Therefore, applying the rule stated in Mullis, any person other than the Tribe who exclusively possessed the property would be a stranger to the holder of the legal title and would be presumed to be holding it adversely.
 
 
 21
 In addition, when "a person goes into possession of land under a deed from a third person which purports on its face to convey to him an absolute and exclusive title to the entire interest in the land, and such deed is spread upon the public records, this is notice to the world that he is claiming the entire and exclusive interest in the land, and his possession may be adverse to all the world from the time of its commencement." Sudduth v. Sumeral, 61 S.C. 276, 39 S.E. 534, 539 (1901). "The claimant's possession and its continuity will be sufficient if by his acts and conduct it is apparent to men of ordinary prudence that he is asserting and exercising ownership over the property; and for this purpose it is necessary to take into consideration the nature, character, and location of the property and the uses for which it is fitted or to which it has been put." Smith v. Southern Railway, 237 S.C. 597, 118 S.E.2d 440, 443 (1961) (quoting 1 Am.Jur. Adverse Possession § 149).
 
 
 22
 The Tribe has not met its burden in establishing that there is a genuine issue for trial as to many of the claimants.[5] To survive the claimants' motions for summary judgment, the Tribe must establish that there is a genuine issue as to whether the claimants have satisfied South Carolina's adverse possession requirements. Once a claimant met his burden under Rule 56(c), the Tribe was required to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 23
 The Tribe argues that an averment of possession in an affidavit is insufficient to establish possession for summary judgment purposes. We disagree. Once a claimant stated in an affidavit sufficient facts to sustain a motion for summary judgment in his favor, the burden shifted to the Tribe to establish that there is a "material issue of fact." Affidavits by a claimant that he possessed the property or held and occupied the property as his own, paid taxes on it, and took steps to protect it from trespassers is sufficient to sustain a motion for summary judgment so long as the ten-year requirement is met and the statements were made on personal knowledge. Therefore, in order to avoid summary judgment when faced with such an affidavit, the Tribe was required, by affidavit or as otherwise provided for in Rule 56, to allege facts showing that there is a dispute as to whether a claimant did those things claimed in the affidavit. Absent such a showing, there is no "material issue of fact" and summary judgment was properly granted to the claimant.
 
 
 24
 Some of the claimants, by affidavit, identified the nature and use of the property they claimed as timber farming, timber growing, timberlands, or tree farm. The Tribe argues that these descriptions are insufficient to sustain a motion for summary judgment. Again, the Tribe has mistaken the summary judgment standard. The statements by the claimants are sufficient to meet the requirements of adverse possession. See Mullis, 118 S.E.2d at 66 (claimant who entered upon the land under color of title and occupied the land for his ordinary use in growing timber upon land and obtaining timber therefrom satisfied adverse possession requirements). Therefore, to avoid having summary judgment granted against them, the Tribe had the burden of disputing, by affidavit or otherwise, that the property was not used for timber farming and that any other acts alleged which would establish possession were not present.
 
 
 25
 Further, we are of opinion that averments that property was used for recreational or farming purposes are sufficient to establish possession for adverse possession purposes. See Mullis, 118 S.E.2d at 65 (acts of adverse possession "are only required to be exercised in such way and in such manner as is consistent with the use to which the lands may be put and the situation of the property...."). Again, to avoid summary judgment the Tribe was required to controvert facts alleged in the claimants' affidavits.
 
 
 26
 In sum we find that those averments made in the affidavits are sufficient to satisfy the open, notorious, continuous, and hostile requirements.[6] The only questions remaining are whether the affidavits sufficiently established that they were based on personal knowledge and whether they established that the ten-year period was met.
 
 III.
 No Personal Knowledge by Affiants
 
 27
 The Tribe argues that some of the affidavits are not based on personal knowledge and, as a consequence, are insufficient as a basis for summary judgment. Federal Rule of Civil Procedure 56(e) provides as follows:
 
 
 28
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters therein.
 
 
 29
 To comply with Rule 56(e), there must be a showing that the statements made in the affidavits were made on personal knowledge. "The absence of an affirmative showing of personal knowledge of specific facts vitiates the sufficiency of the affidavits and, accordingly, summary disposition based thereon [is] improper." Antonio v. Barnes, 464 F.2d 584, 585 (4th Cir.1972).
 
 
 30
 The Tribe asserts that some of the affidavits are insufficient because there has been no showing that the statements contained in them are based on personal knowledge. Some of these statements were made by individuals concerning use of the property by family members. We are of opinion that, in ordinary circumstances, and nothing else appearing, an individual can be presumed to have personal knowledge of the possession of land by a family member. Absent a specific showing by the Tribe that an individual did not have personal knowledge of the use of a tract of land by a family member, the statements concerning familial use of the property comply with Rule 56(e)'s personal knowledge requirement.
 
 
 31
 Therefore, we reject the Tribe's argument that the affidavits were not based on personal knowledge as to those statements concerning use of property by family members of the affiant.
 
 
 32
 The Tribe also attacks certain affidavits made by corporate officers on behalf of the corporation. We are of opinion that, ordinarily, officers would have personal knowledge of the acts of their corporations. Therefore, since the Tribe did not set forth facts, by affidavit or otherwise, that would show that the officers did not have personal knowledge, the personal knowledge requirement is satisfied as to those affidavits.
 
 
 33
 Two of the affidavits attacked as insufficient for lack of personal knowledge were made by one Alton G. Brown. In his first affidavit, dated May 22, 1989, Brown does not allege that his statements were made based on personal knowledge. However, this is remedied in his supplemental affidavit wherein he states, "During the entire period from 1962 to 1979, I was familiar with use and possession of the Spencer property referred to in my affidavit of May 22, 1989." Therefore, the combined affidavits were sufficient.
 
 
 34
 As to those affidavits set forth at Appendix C, we are of opinion that, while they do set forth sufficient facts to sustain a motion for summary judgment, on their face, they do not establish that the affiant's statements were based on personal knowledge. Therefore, we remand as to the claims based on those affidavits solely for the district court to determine whether the statements were made on the basis of personal knowledge.
 
 
 35
 While certain affidavits did not establish that they were based on personal knowledge, summary judgment was properly granted as to the property described therein as supplemental affidavits were filed that remedied the problem.
 
 IV.
 Tacking
 
 36
 The general rule in South Carolina, contrary to the rule in most jurisdictions, is that "even though there be privity by deed or devise between successive adverse occupants of land, the possession of such occupants cannot be tacked to make out title by adverse possession under the statute of limitations." D. Means, Survey of South Carolina Law: Property, 10 S.C.L.Q. 90 (1957). Tacking has been allowed in South Carolina in cases of intestate succession, but not when the disseisor conveys by deed. See Epperson v. Stansill, 64 S.C. 485, 42 S.E. 426 (1902). In the following passage, the Supreme Court of South Carolina explained its reasoning:
 
 
 37
 If possession of land is transmitted by the act of disseisor before the statutory bar is complete, the grantee of the disseisor cannot unite his possession with that of the disseisor in order to show adverse possession for the requisite period. But when the heir is in of his ancestor's possession, and makes no new entry, the possession of ancestor and heir may be united in making out the statutory period; the distinction being that, when possession is cast by operation of law from ancestor to heir in possession, there is no break in the continuity of possession, whereas, in the case of disseisor and grantee, there is a new entry and a break in the continuity of possession.
 
 
 38
 Epperson, 42 S.E. at 427 (citations omitted). Therefore, following that Court's reasoning, we are of opinion that South Carolina courts would allow tacking when a change in possession occurs by operation of law. It follows that when a transfer in possession occurs other than by operation of law, South Carolina courts would not allow tacking.
 
 
 39
 The district court in granting summary judgment allowed tacking in a number of situations. The Tribe argues that the court erroneously created new exceptions to South Carolina's no-tacking rule and, in other instances, erroneously applied the no-tacking rule.[7] We take each instance in turn.
 
 
 40
 IV.A.
 
 Corporate Merger
 
 41
 The district court allowed tacking in instances when a corporate merger occurred. There appears to be no South Carolina authority on this precise point. The Tribe relies on the following language from Epperson, 42 S.E. at 427, to support its argument that tacking should not be allowed in the merger context: "If possession of land is transmitted by the act of disseisor before the statutory bar is complete, the grantee of the disseisor cannot unite his possession with that of the disseisor in order to show adverse possession for the requisite period." The Tribe asserts that merger documents are similar to a deed and, therefore, break the period of possession, because they involve a voluntary act.
 
 
 42
 We are of opinion, however, that the same rationale used by the courts in allowing tacking between an ancestor and heir, that "when possession is cast by operation of law from ancestor to heir in possession, there is no break in the continuity of possession," Epperson, 42 S.E. at 427, would allow tacking in the context of a corporate merger. While it is true that merger is a voluntary act, the change in possession of the property occurs by operation of law. See S.C.Code § 33-11-106 ("When a merger takes effect ... the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment...."); S.C.1962 Code § 12-20.6 (superseded) ("All property, real, personal and mixed ... and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed."); Official Comment to S.C.Code § 33-11-106 ("A merger is not a conveyance or transfer, and does not give rise to claims of reverter or impairment of title based on a prohibited conveyance or transfer."). Therefore, the district court did not err in allowing tacking in the context of a corporate merger.
 
 
 43
 IV.B.
 
 Transfers from Parent to Subsidiary
 
 44
 On May 1, 1969, Duke Power Company deeded the perimeter lands surrounding the Lake Wylie hydroelectric project to its wholly-owned subsidiary corporation, Crescent Land and Timber Company. The district court granted Duke Power and Crescent's motion for summary judgment based on a ten year period of possession between July 2, 1964 and July 2, 1974. The court stated that Crescent was "a mere alter ego or instrumentality of Duke" Power and the deed did not interrupt continuous possession by Duke Power for adverse possession purposes. We are of opinion that this holding must be reconsidered in light of this opinion.[8]
 
 
 45
 The ten year period was met only if the deed from Duke Power to Crescent had no effect on the running of the statute. The Tribe argues that the running of the statute was interrupted by the 1969 transfer.
 
 
 46
 In South Carolina, "[t]he mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, or render the holding company the owner of the property of the other, or create the relationship of principal and agent, or representative, or alter ego between the two." Gordon v. Hollywood-Beaufort Package Corp., 213 S.C. 438, 49 S.E.2d 718, 720 (1948) (emphasis added).
 
 
 47
 Also in South Carolina, however, in an appropriate case and in furtherance of the ends of justice the corporate veil may be pierced. DeWitt Truck Brokers v. W. Ray Flemming Fruit Company, 540 F.2d 681 (4th Cir.1976). Dewitt, incidentally, is a recent comprehensive exposition of South Carolina law with respect to the facets of alter ego which it discusses. Add to that the principle relied upon by the Tribe, that a piercing of the corporate veil generally will not be permitted for the benefit of the parent corporation or its stockholders, 18 AmJur 2d, Corporations, § 46, which is in accord with 1 Fletcher Cyclopedia, Corporations (1990), p. 615, that a sole shareholder may not choose to ignore the corporate entity when it is convenient. With these principles in mind, it appears that Duke had acquired the perimeter property surrounding Lake Wylie some years prior to 1969 and prior to 1965. In 1965, the Federal Power Commission entered its Order 313 requiring power companies to provide recreational opportunities on properties surrounding their reservoirs. In 1969, Duke conveyed the perimeter lands surrounding Lake Wylie to its subsidiary, Crescent. Standing alone, this might seem to be a conveyance which would prevent tacking on the part of Duke. So far as its title to the perimeter land is concerned, an affidavit of an officer of Crescent, however, states facts which tend to show that Crescent may be the alter ego of Duke. On the other hand, the conveyance of the perimeter lands to Crescent may tend to show that Duke treated Crescent as a separate corporate entity and not as its alter ego, if, as the Tribe claims, the purpose of the conveyance was to avoid setting up recreational facilities as required by FPC Order 313. The district court found that Duke had not violated Order 313. It gave no reasons, but the affidavit of Crescent's attorney may tend to support that conclusion. Whether or not FPC Order 313 was violated, however, is not the end of the question. If the conveyance from Duke to Crescent enabled Duke to avoid compliance with Order 313, even though such avoidance may have been quite legitimate, that would be evidence which tends to show that Duke treated Crescent as a separate corporation and not as its alter ego. The district court also did not consider whether or not the rule we have cited from Fletcher, that a sole shareholder may not choose to ignore the corporate entity when it is convenient, has been violated.
 
 
 48
 In view of the facts we have stated and the authorities, we are of opinion that the district court erred in granting summary judgment to Duke and Crescent with respect to the perimeter property. Its judgment in that respect is vacated and the case remanded for such further fact finding as may be appropriate.[9]
 
 
 49
 IV.C.
 
 
 50
 Transfer between Subsidiary Corporations of Same Parent Corporation
 
 
 51
 The same rules apply in this situation as apply to a transfer between a parent and subsidiary. If the transfer is found as a matter of fact and law to be to an alter ego, the tacking requirement will be complied with, otherwise it will not. The holding of the district court that the ten year period ran as to property claimed by Bowater, Inc., because the transfer between its subsidiaries East Highlands Company and Catawba Timber Company had the effect of stopping the running of the statute prior to the running of the ten-year period must be vacated and that transfer re-examined under the principles stated above in this opinion.
 
 
 52
 IV.D.
 
 Devise to Heirs
 
 53
 The district court held that "[a] devise to an heir of a testator does not interrupt possession." This ruling may be valid in some instances, but invalid in others, as the doctrine of worthier title may apply.
 
 
 54
 Under the doctrine of worthier title, a devise to the heirs of the testator was a nullity if the interest limited in their favor was identical to that which such heirs would have taken by descent if there had been no devise to them. The rule originated because the feudal incidents of relief, wardship, and marriage were preserved only if the new tenant of land acquired an interest by descent from the former tenant. See Restatement (Second) of Property § 30.2, Comment on Subsection (2). Because the reason for the rule, the preservation of feudal incidents, no longer exists, the doctrine as it applies to testamentary dispositions has been abolished by statute in several States, but not in South Carolina. See Restatement (Second) of Property § 30.2, Statutory Note.
 
 
 55
 South Carolina applied the doctrine of worthier title in the case of Seabrook v. Seabrook, 10 S.C.Eq. 495 (1859). The rule was there stated as follows, p. 503-504:
 
 
 56
 "It is undoubted law, that where a testator gives by his will the same estate to the same persons who would be entitled to take that estate by operation of law in case of an intestacy, the devise or legacy will be void, and the right of the party or parties entitled will be referred to the law of distributions and descents. If there be any variation between the disposition which the will, and which the law makes in such a case, either in regard to the persons who are to take, or to the quantity of the estate, the title will be referred to the will."
 
 
 57
 The court held that the devise to the heirs was void and as to the heir in question the testator died intestate.
 
 
 58
 Without attempting to go into all of the South Carolina cases touching the subject, we come to the case of Burnett v. Crawford, 50 S.C. 161, 27 S.E. 645 (1897) which is relied upon by the Tribe. That was a case in which an heir had sued the children of another heir for partition. The plaintiff heir had taken her estate by intestacy and the defendant children of the other heir had taken their interest by devise. The testator had entered into a purported settlement of rights in the property with the plaintiff heir some 9 years prior to the testator's death. During that 9 year period, the court considered, at least for the purposes of its opinion, that the testator held adversely to the plaintiff heir. Although the plaintiff brought suit 11 years after the settlement, the court refused to permit tacking of the 9 year period and the two year period although the devise was to the defendants. The Court stated at 27 S.E. p. 647:
 
 
 59
 "A devisee under a will does not take possession of the devise as heir, but rather as the grantee or purchaser of the testator."
 
 
 60
 It is that language the Tribe relies upon. But we note that almost immediately following that language, and indeed in the same paragraph, the following statement at p. 647-648:
 
 
 61
 "Under a properly framed request, appellant would have been entitled to have the jury instructed as to the right of a devisee claiming under a will to unite his possession with that of his testator so as to make out the statutory period of adverse possession."
 
 
 62
 While the first statement just quoted may seem to have abolished the doctrine of worthier title (as it applies to possession) by implication, the second statement just as surely provides the doctrine to have survived. We are of opinion that both statements may be reconciled by referring back to page 504 of Seabrook, which states that if there be any variation between the disposition made by the will and the law, either in regard to the persons who are to take or the quantity of the estate, the title will be referred to the will. While it is true that the testator in Burnett did devise the land in question to his children, the defendants, the terms of the will are not stated and we must suppose, in order to justify the correctness of the opinion and make it consistent with the other South Carolina cases, that the will involved, while it may have devised the land to the same heirs, did not give to them the same quantity of estate they would have received by virtue of intestacy or that the record does not show the quantity of estate. We are reassured in our view of Burnett by the subsequent case of Kilgore v. Kirkland, 69 S.C. 78, 48 S.E. 44 (1904). In Kilgore, the testator had received the property in question, apparently by deed, some 4 or 5 years before his death in 1850, at which time he devised the same to his children, share and share alike. The heirs continued in the testator's possession until the year 1858. On these facts, the South Carolina Court stated:
 
 
 63
 "... while it is also true to that possession of a devisee cannot be united with that of the testator, to make out adverse possession for the statutory period (Burnett v. Crawford, 50 S.C. 161, 27 S.E. 645), nevertheless, when the heir is in of his ancestor's possession and makes no new entry, the possession of ancestor and heir may be united in making out the period necessary to quiet title."
 
 
 64
 48 S.E. at 46.
 
 
 65
 Thus our construction of Burnett follows Kilgore 's construction of Burnett, and we think the doctrine of worthier title is extant in South Carolina. We note that Professor Means agrees with our conclusion that tacking should be permitted under the doctrine of worthier title in such cases, although he arrives at his construction of Burnett by his view that the problem was not properly presented to the South Carolina Court. Survey of South Carolina Law, 10 S.C.L.Q. 90, n. 4 (1957). We are further of opinion that Seabrook should not be held by us to have been overruled by implication. Overruling by implication is not favored. See Rodriquez de Quijas v. Shearson/American Express, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989); United States v. Bryan, 339 U.S. 323, 343 at 345-346, 70 S.Ct. 724, 736 at 737-738, 94 L.Ed. 884 (1950) (Justice Jackson concurring). And in diversity cases also that is the rule in this circuit. See Walk v. Baltimore & Ohio Railroad, 847 F.2d 1100, 1108 (4th Cir.1988)
 
 
 66
 Thus, this aspect of the case must be remanded with instructions to apply the doctrine of worthier title if the claimant heir took as devisee and with the same quantity of estate he would have taken if an heir. If all those requirements are met tacking should be permitted in such cases.
 
 
 67
 IV.E.
 
 Change in the Identity of a Trustee
 
 68
 The Tribe argues that the district court erred in holding that a change in the identity of a trustee does not interrupt the running of the ten-year statute. We are of opinion the district court correctly held that the appointment of a successor trustee upon the death of the former trustee does not interrupt the running of the statute of limitations. It is a fundamental rule of trust law that a trust will not fail for want of a trustee. Leaphart v. Harmon, 186 S.C. 362, 195 S.E. 628, 629 (1938). Therefore, we hold that, by operation of law, possession is cast from the former trustee to his successor.
 
 
 69
 IV.F.
 
 Change in Beneficiary of Trust
 
 70
 The Tribe argues that the transfer of a beneficial interest in a trust interrupts the ten-year period. We find no merit to this contention. The property is held adversely by the trust through the trustee. A change in the beneficial ownership has no effect on the running of the statute as there is no new entry onto the property.
 
 V.
 
 71
 William O. Nisbet Property (602.5 and 53 acre tracts)
 
 
 72
 The Tribe also asserts that a question of fact exists as to the exclusivity and continuity of the possession of William O. Nisbet. Its claim is based on the fact that members of the Catawba Tribe have at times entered the 602.5 and 53 acre tracts owned by Nisbet for the purpose of collecting clay. Mesdames Wade and Campbell submitted affidavits stating that they were never denied access to the property to dig in the clay holes. Nisbet does not dispute that this activity has taken place. However, Nisbet's affidavit shows that he allowed members of the Tribe on to Nisbet's property for access to the clay. He claimed the property as his own and nothing done by the Tribe members amounted to an ouster of Nisbet's possession. Therefore, Nisbet's possession was exclusive and continuous. We agree with the district court's holding that "[a]dverse possession is not interrupted by entry of the owner unless there is also ouster of the claimant." "Actual possession, once taken, will continue, though the party taking such possession should not continue to rest with his foot upon the soil, until he be disseised, or until he do some act which amounts to a voluntary abandonment of the possession." Smith v. Southern Railway, 237 S.C. 597, 118 S.E.2d 440, 442 (1961).
 
 
 73
 It is true that the affidavits of Mesdames Wade and Campbell state that members of the Tribe had gone on the property for years, and the Wade affidavit states that such members of the Tribe did not ask permission or notify the Nisbets of their entry. We leave aside for the moment the fact that the Wade affidavit probably shows on its face it is not on personal knowledge as respects other members of the Tribe, but we do not leave aside the fact that it does not show that Nisbet had any knowledge of such entry. Even if the Wade affidavit is construed most favorably to the Tribe, it does not show any ouster of Nisbet under Smith, especially because it does not show that Nisbet knew of any unauthorized entry onto his property.
 
 
 74
 The Tribe's point is without merit.
 
 VI.
 Adverse Possession & Co-Tenancies
 
 75
 The Tribe takes issue with the district court's ruling that "[t]he adverse possession of one co-tenant establishes the adverse possession of his co-tenants." We find no error.
 
 
 76
 In South Carolina, it is presumed that "the possession of one tenant in common is the possession of all." See Woods v. Bivens, 292 S.C. 76, 354 S.E.2d 909, 911 (1987). The operation of the rule that the possession of one co-tenant is the possession of all only ceases if "such possession becomes adverse to the co-owners of the possessor." 354 S.E.2d at 911. Therefore, a co-tenant who satisfies the adverse possession requirements does so for all of the co-tenants so long as he does not claim to be holding adversely to his co-tenants. In Terwilliger v. Marion, 222 S.C. 185, 72 S.E.2d 165, 167 (1952), the Supreme Court of South Carolina recognized that a co-tenant can establish adverse possession for both herself and her co-tenant. That being so, we are of opinion that a change in identity of co-tenants has no effect on establishing adverse possession so long as one co-tenant possesses the property for the requisite period. Therefore, we find no merit to the Tribe's contention that the transfer of title as to one co-tenant interrupted the running of the adverse possession statute.[10]
 
 VII.
 Effect of Non-Residency of Claimants
 
 77
 The district court ruled that "[t]he non-residence of a defendant claiming adverse possession does not toll the statutory period." The Tribe argues that the ten year adverse possession period was tolled against certain defendants because they may have been outside of South Carolina for more than one year. S.C.Code § 15-3-30 provides that if a defendant is out of state for more than one year when or after a cause of action accrues, the statute of limitations is tolled until his return to the state. See Dandy v. American Laundry Machinery Inc., 301 S.C. 24, 389 S.E.2d 866, 868 (1990).
 
 
 78
 We are of opinion that this tolling statute is not applicable to adverse possession claims. "[T]he purpose of the tolling statute is to remedy the problem of locating a nonresident defendant before expiration of the statute of limitations." 389 S.E.2d at 868. Recently, the Supreme Court of South Carolina has indicated that the tolling statute is inapplicable when the statute's purpose is not fulfilled. See Dandy, 389 S.E.2d at 868 (§ 15-3-30 does not apply to a foreign corporation with a registered agent in South Carolina because there is no problem in locating the nonresident defendant before expiration of the statute of limitations). In so doing, the court appears to have rejected the reasoning used in two prior cases that relied on the plain language of the statute. See Cutino v. Ramsey, 285 S.C. 74, 328 S.E.2d 72 (1985) (tolling statute applies to an out-of-state defendant even when service can be effected by substitute service on the Chief Highway Commissioner); Harris v. Dunlap, 285 S.C. 226, 328 S.E.2d 908 (1985) (amenability to personal service under the long-arm statute does not render the tolling statute inapplicable). The Dandy case makes clear that the current test in South Carolina for determining the applicability of the tolling statute is whether the problem of locating an out-of-state defendant prior to the running of the statute of limitations is present. In the instant case, South Carolina's separate comprehensive statutory scheme for the recovery of real property obviates the need for a tolling statute against out-of-state defendants in adverse possession cases. See S.C.Code, Title 15 Civil Remedies and Procedures, Chapter 67--Recovery of Real Property. Specifically, S.C.Code § 15-67-30 authorizes summons and service by publication on parties outside of the State in actions "to determine adverse claims." Therefore, the problem that the tolling statute addresses, the difficulty in locating an out-of-state defendant before expiration of the statute of limitations, is not present as there is no need to locate the out-of-state defendant in an adverse possession case. In sum, we follow South Carolina's rule, as stated in Dandy, that the tolling statute is inapplicable in cases in which the problem that the statute was meant to address is not present and hold the tolling statute for out of state defendants to be inapplicable to adverse possession claims.
 
 VIII.
 Dismissal of Certain Claimants
 
 79
 The Tribe alleges that the district court erroneously dismissed certain parties from the case. The district court dismissed twenty-nine claimants, holding that answers to interrogatories on file established that those claimants were entitled to have all parcels claimed by them dismissed from the action. The Tribe argues that, in fact, no answers to interrogatories were filed with the district court. The claimants argue that the information contained in the interrogatory answers was presented to the district court in summary form in briefs, memoranda, and appendices and the Tribe did not object to the use of this information in this form. We are of opinion the district court did not err in relying on these summaries in its dismissal orders as the Tribe did not dispute their accuracy.
 
 
 80
 We are of opinion, however, that as to those parties that moved for summary judgment as to certain parcels that were not released by the summary judgment orders, the district court erred in dismissing them from the action. Those parties are listed in Appendix H.[11]
 
 
 81
 Based on the foregoing, the judgment of the district court is
 
 
 82
 AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.
 
 APPENDICES A THROUGH H
 
 83
 Without necessarily implying any criticism of the attorneys for the Tribe or for the defendants, a glance at the style of this case and a reference to our various opinions herein shows the more than complicated position in which the parties and the court find ourselves. Many of the defendants own multiple tracts of land and the decision of the district court appealed from is contained in large part in four judgment orders accompanied by multiple exhibits.
 
 
 84
 Perhaps because the Tribe was confined, at least in part, by rules as to numbers of pages, the content of its brief on appeal generally stated its complaints in the most general terms as to parties and tracts affected, while the brief itself may have specifically stated the nature of the legal error claimed.
 
 
 85
 The reply brief of the defendants in many cases picked up and argued the specific legal issues presented leaving their general application as to parties and parcels of land to an interpretation of the district court's orders and the briefs. While we think with reasonable certainty that the attorneys quite understand the parties and the property affected by the briefs, only a causal inspection will reveal that in most cases such is not shown by a reading of the briefs without minute references to the appendix and in some cases to parts of the record not included in the appendix.
 
 
 86
 For example, on page 41 of the Tribe's brief, in part B, 2, c. "Tree Farms" the objection is "A number of claims identified the nature and use of the property claimed by them as tree farm, timber farming, timber growing or timber lands." The brief then lists 18 appendix references without giving names of defendants or properties affected. To this, the defendants respond on page 21 of their brief by identifying the property of only two defendants with particularity. Much the same can be said of the Tribe's contentions on page 43, part d. with reference to "Farming or Recreational or Social Purpose." While the defendants response on page 28 is in more detail than the response mentioned for tree farming, nevertheless, it does not identify all of the property as to which the Tribe's claim is made. We could go on and on, some better and some worse, but these two examples are enough to show why the mechanical construction of our opinion, for the most part, speaks in general terms, and shows its application in most cases by way of appendices. That was the only practical means we could devise within any kind of reasonable page limitation to show what we had decided and how our decision applied to a particular defendant or piece of property. We must all remember that this opinion concerns the title to real estate and well may end up being recorded in the real estate records of the State.
 
 
 87
 We should say without rancor that the briefs we have had in this case do not commend themselves as models of form. We have, however, addressed each question of law raised by the Tribe.
 
 
 88
 For these reasons, we have included as a part of this opinion and the decision in this case appendices A through H, which will show the parties affected, precisely where to find the properties affected, and the parts of our decision affecting the same, including our disposition of the questions.
 
 APPENDIX A
 
 89
 The defendants' unopposed motion for summary affirmance is hereby GRANTED, and
 
 
 90
 the judgment of the district court is hereby AFFIRMED as to the following
 
 
 91
 parcels of land.
 
 
 92
 Defendant Portion of Judgment Order Describing Parcel[1]
1. Hoechst One, A, (856); Deed dated 10/1/86; Deed Book 922, page 195,
 Celanese York County; except property described on page 2, paragraph
 9 of the deed: Deed from Celriver Recreation Assoc. to
 Celanese
 Corp. dated 6/2/78 recorded in York County Clerk's Office,
 Deed Book 572, page 377, on 6/5/78 and property described
 on page 2, paragraph 10 of the deed: Deed from David Int'l,
 Inc., to Celanese Corp. dated 6/11/85 recorded in York
 County Clerk's Office, Deed Book 825, page 160 on 6/26/85.
2. Wachovia One, B, p (i), (855); Deed dated 10/30/50, Deed book 164,
 Bank and page 320 York County, SC
 Trust
 Company
3. Heritage One, C, p 4, (857); Deed dated 8/1/85, Deed Book F"6, page
 Village 2544 One, C, p 10, (858"59); Deed dated 11/30/81; Deed Book
 648, page 311 and Deed dated 1/27/84; Deed Book 741, page
 332; One, C, p 11, (859); Deed dated 9/30/82; Deed Book
 678, page 230; One, C, p 13, (859); Deed dated 5/2/85, Deed
 Book 816, page 105
4. T.W. One, J, (866); TMS No. 664"00"00"020; Deed dated 6/20/63;
 Hutchison Deed Book 313, page 383
5. Francis M. One, K, (867); Deed dated 11/23/76, Deed Book 540, page 16;
 Mack, Jr. Deed dated 11/15/50, Deed Book 165, page 491; and Deed
 dated 1/24/85, Deed Book 804, page 157
6. John S. One, L, (868); Deed dated 11/2/50; Deed Book 165, page 23
 Simpson
7. Thomas Brown One, M, (869); File No. 14644 Probate Court York County and
 Snodgrass, File No. 15772; Probate Court York County
 Jr.
8. City of Rock One, O, (871); Deed dated 9/5/86; Deed Book 906, page 293
 Hill South
 Carolina
 
 APPENDIX B
 
 93
 The judgment of the district court is hereby AFFIRMED as to the following
 
 
 94
 parcels of land.
 Defendant Portion of Judgment Order Describing Section of
 Parcel this
 Opinion
 Addressing
 Objections[2]
1. Wachovia Bank and One, B, p (ii), (855) VI (All
 Trust Company tracts*)
 Deed dated 10/30/1950
 Deed Book 164, page 320 Three, A, (968)
 p 1.a.--Deed dated 6/20/57 Deed Book
 240, page 182
 p 1.b.--Deed dated 6/21/57 Deed Book
 240, page 179
 p 1.c.--Deed dated 12/12/63 Deed Book
 I, page 203
 p 2.a.--Deed dated 4/20/66 II (poss.)
 p 3"275 acres, York County VII
 p 4"680 acres, York County VII
 
 
 95
 * An objection was raised as to all tracts in the judgment order and summary
 
 
 96
 judgment is affirmed as to all tracts unless they are specifically mentioned
 
 
 97
 in Appendices C"H.
 
 
 98
 2. Heritage Village One, C, (857)
 
 
 99
 Date of Conveyance Book Page
 ? 250 522 VII
 12/1/83 733 95 n. 5
 (Glover) 812 356 n. 5
 7/5/84 772 356 III
 n. 5
 11/15/78 585 18 III
 8/10/84 773 39 III
 6/15/84 771 188 n. 5
 9/16/75 528 226 III
 4/29/81 631 555 n. 5
 1/15/85 803 202 III
 n. 5
 4/25/78 569 939 III
 Three, B, (969)
Date of Conveyance Book Page
 2/15/85 804 99 III
 n. 5
 12/12/77 C"6 5365 II (poss.)
 2/84 756 83 III
 VII
 1/6/78 562 914 II (dates)
 1/78 C"6 5482 III
 1/78 C"6 5483 VII
 8/31/83 718 318 II (cont.)
 III
3. Herald Publishing One, D, (860) Tract C--Deed dated
 Company 5/12/77; Deed Book 548, page 49
 Tracts A, B & F--Deed dated 6/26/86;
 Deed Book 896, page 286
 Tract E--Deed dated 5/20/81; Deed Book
 631, page 957
 Tract D--Deed dated 6/26/86; Deed Book
 896, page 286
 Three, C, (970) II (poss.)
 Tracts L & K--Deed dated III
 10/31/85; Deed Book 849, page 500
4. C.H. Albright Three, D, (971"972) III, n. 5
 (All
 tracts
 below)
 Tax Map Numbers
 600"02"03"061 II (dates)
 II (cont.)
 600"02"02"064 II (dates)
 II (cont.)
 598"19"03"016 II (dates)
 II (cont.)
 598"19"03"015 II (cont.)
 627"07"04"025 II (dates)
 II (cont.)
 600"20"01"010 II (dates)
 II (cont.)
 600"21"03"036 II (dates)
 II (cont.)
 600"21"01"018 II (dates)
 II (cont.)
 600"21"02"011 II (dates)
 II (cont.)
 600"21"02"010 II (dates)
 II (cont.)
 627"02"02"006 II (dates)
 II (cont.)
 620"00"00"005 II (tree
 fm.)
 II (dates)
 620"00"00"007 II (tree
 fm.)
 II (dates)
 620"00"00"008 II (tree
 fm.)
 II (dates)
 627"22"02"021 II (poss.)
 
 VI
 5. Ned M. Albright One, F, (862)
 
 100
 Date of Conveyance Book Page
 2/13/56 221 447
 2/17/78 565 930
 3/21/80 611 528
 5/17/79 594 256
 Three, E, (973)
 III, n. 5
 (All
 tracts
 below)
 Tax Map Numbers
 629"06"02"015 II (dates)
 II (cont.)
 627"22"02"021
6. David G. Anderson One, G, (863)
Date of Conveyance Book Page
 8/24/85 838 208
 7/8/85 827 350 IV"E
 VI
 VII
7. John Wesley One, H, (864)
 Anderson, III
Date of Conveyance Book Page
 7/8/85 827 350 IV"E
 VI
 8/24/85 838 208
 Three, I, (977) n. 10
 Tax Map 604"06"01"028 III
 II (dates)
8. F.S. Barnes, Jr. One, I, (865)
 Deed dated 1/28/57 III
 Deed Book 235, page 415
 Three, J, (978) III (All
 tracts
 below)
 536"00"00"038 II (farm)
 II (dates)
 597"00"00"019 II (tree)
 II (dates)
 639"00"00"022 II (poss.)
 II (dates)
 639"00"00"025 II (farm)
 II (dates)
 639"00"00"030 II (farm)
 II (dates)
 639"00"00"031 II (farm)
 II (dates)
 639"00"00"032 II (farm)
 II (dates)
 627"10"02"029 II (dates)
 627"12"01"001 II (dates)
9. Marshall E. Walker One, N, (870)
Date of Conveyance Book Page
 3/6/69 387 393
 10/12/56 202 307
 9/26/69 383 307
 Three, P, (985"986) III, n. 5
 (All
 tracts*)
 624"00"00"016 II (tree)
 II (dates)
 624"00"00"011 II (tree)
 II (dates)
 677"00"00"026 II (tree)
 II (dates)
 624"00"00"012 II (tree)
 II (dates)
 621"00"00"042 II (tree)
 II (dates)
 622"00"00"014 II (tree)
 II (dates)
 674"00"00"003 II (tree)
 II (dates)
 675"00"00"064 II (tree)
 II (dates)
 675"00"00"065 II (tree)
 II (dates)
 752"00"00"031 II (tree)
 II (dates)
 675"00"00"062 II (tree)
 II (dates)
 624"00"00"014 II (tree)
 II (dates)
 678"00"00"017 II (tree)
 II (dates)
 678"00"00"011 II (poss.)
 II (dates)
 622"00"00"007 II (dates)
 622"00"00"013 II (dates)
 624"00"00"015 II (dates)
 692"00"00"046 II (dates)
 598"05"02"010 II (dates)
 677"00"00"019 II (dates)
 674"00"00"006
 624"00"00"010
10. Duke Power Company One, P, (872"900) II, n. 5
 (All
 tracts*)
 Date of Deed Recordation Date Book/Page
York County, South Carolina
 5/11/100 6/13/00 19/621"633
 09/01/25 12/05/25 65/48
 09/01/25 12/05/25 65/53
 12/19/27 12/21/27 65/303
 05/10/32 06/01/32 74/540
 06/27/36 08/05/36 87/138
 09/08/24 09/17/24 61/283
 06/05/24 06/07/24 61/68
 03/19/26 04/09/26 2"P/19 (Plat Book)
 05/21/30 05/28/30 74/231
 05/18/25 12/24/25 65/61
 09/03/24 09/17/24 54/623
 09/24/24 10/01/24 54/623
 09/08/24 09/17/24 54/617
 09/23/24 10/01/24 54/622
 09/01/25 02/05/25 65/53
 06/27/36 08/05/36 87/138
 12/24/03 01/23/05 24/637"38
 12/30/03 01/23/05 24/636"37
 12/23/03 01/23/05 24/635"36
 12/26/03 01/23/05 24/634
 01/02/04 01/23/05 24/632"33
 12/23/03 01/23/05 24/631"32
 01/26/04 01/23/05 24"630"31
 01/28/04 01/23/05 24/628"29
 04/12/04 01/23/05 24/627"28
 01/16/04 01/23/05 24/621"22
 12/23/03 01/23/05 24/625"26
 12/21/03 01/23/05 24/622"23
 12/21/03 01/23/05 24/626"27
 12/21/03 01/23/05 24/620"21
 03/11/04 01/23/05 24/624"25
 03/31/04 01/23/05 24/623"24
 01/27/04 01/23/05 24/638"39
 02/25/05 05/16/05 25/56"57
 04/01/04 06/03/05 25/86
 07/27/05 07/31/05 25/142
 01/30/09 02/01/09 29/455"56
 04/11/14 06/06/14 39/614
 04/15/16 06/06/14 39/613
 03/16/16 03/28/16 44/137
 03/16/16 03/28/16 44/138
 03/17/16 03/28/16 44/138
 03/20/16 03/28/16 44/139
 03/17/16 03/28/16 44/139
 03/17/16 03/25/16 44/140
 03/17/16 03/28/16 44/140
 03/17/16 03/28/16 44/141
 03/17/16 03/25/16 44/141
 03/16/16 03/28/16 44/142
 03/16/16 03/28/16 44/142
 03/17/16 03/28/16 44/143
 03/28/16 04/04/16 44/144
 03/29/16 04/04/16 44/144
 03/29/16 04/04/16 44/145
 03/22/16 04/12/16 44/152
 03/29/16 07/28/16 44/166
 01/06/04 01/23/05 24/641"42
 01/14/04 01/23/05 24/642"43
 01/06/04 01/23/05 24/646"47
 01/19/04 01/23/05 24/645"46
 03/01/04 01/23/05 24/643"44
 01/19/04 01/23/05 24/644"45
 01/19/04 01/23/05 24/647"48
 01/11/04 01/23/05 24/649
 07/19/16 07/22/26 44/165
 08/08/16 08/14/16 44/172
 09/15/25 01/01/25 65/14
 09/03/30 10/18/30 74/277
 03/30/34 04/03/34 79/184
 09/20/38 09/21/38 92/599
 03/01/40 03/12/40 98/252
 09/26/50 10/12/50 163/384
 04/22/53 04/30/53 193/75
 03/08/04 01/23/05 24/664
 03/08/04 01/23/05 24/665"66
 03/07/04 01/23/05 24/659"60
 03/25/04 01/23/05 24/663"64
 03/08/04 01/23/05 24/660"61
 03/08/04 01/23/05 24/662"63
 07/19/04 01/23/05 24/639"40
 03/10/04 01/23/05 24/650"51
 03/11/04 01/23/05 24/650"51
 03/11/04 01/23/05 24/658"59
 03/07/04 01/23/05 24/651"52
 03/10/04 01/23/05 24/653"54
 03/08/04 01/23/05 24/654"55
 03/15/04 01/23/05 24/652"53
 03/11/04 01/23/05 24/656"57
 03/07/04 01/23/05 24/655"56
 03/07/04 01/23/05 24/657"58
 09/01/05 08/24/06 26/370
 07/02/07 07/13/07 27/577
 03/20/07 09/13/07 27/671
 03/20/07 09/13/07 27/673
 03/20/07 09/13/07 27/672
 05/24/17 06/04/17 44/315
 05/22/17 06/05/17 44/313
 05/27/17 06/05/17 44/312
 05/22/17 06/05/17 44/313
 05/24/17 06/05/17 44/313
 05/24/17 06/13/17 44/318
 06/08/17 06/13/17 44/318
 06/14/17 06/19/17 44/320"21
 05/26/17 06/05/17 44/315
 06/15/17 06/15/17 44/318"19
 06/15/17 06/15/17 44/319
 06/25/17 07/12/17 44/324"25
 01/04/05 01/23/05 24/640"41
 01/05/05 05/16/05 25/58
 01/18/05 05/16/05 25/59
 03/15/06 05/01/06 25/767
 09/19/05 05/01/06 25/771"772
 06/08/05 05/01/06 26/768"769
 03/15/06 05/01/06 25/779"780
 06/13/05 05/01/06 25/770"771
 09/19/05 05/01/06 25/772"773
 09/24/05 05/01/06 25/769"770
 02/13/06 05/01/06 25/768
 03/15/06 05/01/06 25/773"774
 06/05/05 06/28/06 26/186
 09/01/05 08/24/06 26/370
 06/13/07 06/17/07 27/546"547
 09/02/07 10/25/07 27/710"711
 06/14/05 05/01/06 25/776"77
 10/20/05 05/01/06 25/774"75
 10/21/05 05/01/06 25/775"76
 09/01/05 08/24/06 26/359
 09/01/05 08/24/06 26/369
 08/02/05 08/24/06 36/372
 09/08/05 08/24/06 26/376
 08/21/05 08/24/06 26/375
 03/29/06 08/02/06 26/251
 07/30/06 08/02/06 26/253
 07/05/06 08/02/06 26/255
 03/31/06 08/02/06 26/254
 06/19/06 08/02/06 26/256
 04/06/06 08/02/06 26/257
 05/07/06 08/02/06 26/259
 05/07/06 08/02/06 26/260
 03/29/06 08/02/06 26/258
 07/05/06 08/02/06 26/262
 04/04/06 08/02/06 26/261
 03/28/06 28/02/26 36/263
 03/28/06 08/02/26 26/264
 03/28/06 08/02/06 26/265
 07/05/06 08/02/06 26/267
 07/05/06 08/02/06 26/268
 03/29/06 08/02/06 26/266
 05/08/06 08/02/06 26/269
 07/05/06 08/02/06 26/270
 05/07/06 08/02/06 26/272
 03/31/06 08/02/06 26/275
 04/04/06 08/02/06 26/276
 04/03/06 08/02/06 26/278
 03/29/06 08/02/06 26/278
 06/19/06 08/02/06 26/280
 01/25/07 01/28/07 27/135"36
 07/04/06 01/28/07 27/133/35
 08/30/06 01/28/07 27/148"149
 09/05/06 01/28/07 27/149"50
 08/16/06 01/28/07 27/141"42
 08/16/06 01/28/07 27/131"32
 08/30/06 01/28/07 27/127"128
 01/25/07 01/28/07 27/132
 12/21/06 01/28/07 27/153
 11/12/06 06/17/07 27/545"46
 01/17/07 06/17/07 27/555"556
 09/07/06 06/19/07 27/562
 05/29/07 08/28/07 27/636
 03/27/06 11/15/07 27/771"72
 01/15/09 01/26/09 29/446
 01/26/09 02/01/09 29/456"459
 02/11/09 02/22/09 29/484
 04/05/09 04/29/09 29/530
 04/16/09 05/05/09 29/535"56
 01/07/09 06/16/09 29/594
 11/29/09 01/18/10 29/791"793
 01/05/17 01/09/17 44/249
 01/03/17 01/09/17 44/250
 01/06/17 01/09/17 44/250
 01/03/17 01/09/17 44/250"51
 01/02/17 01/09/17 44/251
 01/06/17 01/09/17 44/245"46
 01/06/17 01/09/17 44/244
 01/04/17 01/09/17 44/247
 01/06/17 01/09/17 44/246
 01/06/17 01/09/17 44/245
 01/03/17 01/09/17 44/247"48
 01/02/17 01/09/17 44/246
 01/03/17 01/09/17 44/249
 01/04/17 01/09/17 44/247
 01/01/17 01/09/17 44/248
 01/02/17 01/09/17 44/244
 01/08/17 01/09/17 44/243
 01/03/17 01/09/17 44/244"45
 01/04/17 01/09/17 44/247
 01/09/17 01/17/17 44/257
 01/10/17 01/17/17 44/258
 01/11/17 01/17/17 44/258
 01/09/17 01/17/17 44/258
 01/13/17 01/17/17 44/257
 01/19/17 01/23/17 44/261
 01/17/17 01/23/17 44/261
 01/16/17 01/23/17 44/261
 01/23/17 01/30/17 44/264
 01/23/17 01/30/17 44/264
 01/23/17 01/30/17 44/264
 01/29/17 02/06/17 44/267
 01/29/17 02/06/17 44/267"68
 02/09/17 02/16/17 44/272"73
 02/09/17 02/16/17 44/273
 02/10/17 02/16/17 44/273
 03/14/17 03/20/17 44/287
 03/16/17 03/20/17 44/284
 03/19/17 03/20/17 44/285
 03/20/17 03/20/17 44/286
 03/16/17 03/20/17 44/286
 03/13/17 03/20/17 44/2854
 02/09/17 03/20/17 44/286
 03/29/17 04/02/17 44/292
 03/29/17 04/10/17 44/296
 05/22/17 06/05/17 44/311
 05/22/17 06/05/17 44/311
 05/23/17 06/15/17 44/312
 05/24/17 06/05/17 44/315
 05/13/17 06/15/17 44/319
 06/19/17 06/22/17 44/321
 06/28/17 06/29/17 44/322
 09/19/17 09/25/17 44/341
 09/11/17 09/25/17 44/341
 10/10/17 10/18/17 44/348
 02/27/07 06/17/07 27/550
 09/04/06 01/28/07 27/146"47
 05/03/07 06/17/07 27/547"48
 02/27/07 06/17/07 27/554"55
 10/20/06 06/17/07 27/544"45
 02/25/07 06/17/07 27/543"44
 02/25/07 06/17/07 27/542"43
 05/18/07 06/17/07 27/556
 01/18/07 02/27/07 27/338"339
 01/12/17 01/23/17 44/262
 07/20/17 07/31/17 44/331
 04/21/17 04/27/17 44/303
 04/23/17 05/09/17 44/305
 04/04/17 06/22/17 44/322
 03/30/23 04/04/23 54/298
 03/28/23 04/04/23 54/297
 04/05/23 04/10/23 54/303
 04/04/23 04/10/23 54/303
 04/04/23 04/10/23 54/304
 03/07/23 04/10/23 54/305
 04/07/23 04/10/23 54/304
 04/05/23 04/17/23 54/308
 04/12/23 04/17/23 54/314
 04/05/23 04/19/23 54/314
 04/19/23 04/24/23 54/317
 04/20/23 04/24/23 54/319"20
 04/21/23 04/24/23 54/315
 04/21/23 04/24/23 54/316
 04/20/23 04/24/23 54/319
 04/11/23 04/24/23 54/316
 04/20/23 04/24/23 54/318
 04/19/23 04/24/23 54/317
 04/19/23 04/24/23 54/318
 04/20/23 04/24/23 54/319
 04/12/23 05/01/23 54/324
 04/25/23 05/01/23 54/326
 05/24/23 06/01/23 54/347
 04/26/23 05/01/23 54/325
 04/26/23 05/01/23 54/323
 04/04/23 05/01/23 54/327
 04/26/23 05/01/23 54/323
 04/27/23 05/01/23 54/325
 04/27/23 05/01/23 54/324
 05/05/23 05/08/23 54/328
 05/12/23 05/16/23 54/334
 05/04/23 05/16/23 54/333
 05/12/23 05/23/23 54/338
 05/25/23 05/29/23 54/342
 05/24/23 05/29/23 54/346
 05/25/23 05/29/23 54/344
 05/23/23 05/29/23 54/344
 05/24/23 05/29/23 54/345
 05/24/23 05/29/23 54/345
 05/29/23 06/06/23 54/354
 05/26/23 06/06/23 54/351
 04/21/23 06/06/23 54/352
 05/04/23 06/06/23 54/351
 05/04/23 06/06/23 54/353
 05/04/23 06/06/23 54/353
 05/04/23 06/13/23 54/363
 05/04/12 06/13/23 54/361
 06/01/23 06/19/23 54/364
 06/04/23 06/19/23 54/363
 05/04/23 07/06/23 54/373
 05/25/23 01/15/24 54/460
 01/28/36 01/28/26 79/603
 09/24/24 09/24/24 54/620
 09/30/24 10/07/24 54/632
 09/30/24 10/07/24 54/633
 10/02/24 10/07/24 54/633
 10/03/24 10/07/24 54/634
 10/04/24 10/07/24 54/631
 10/04/24 10/07/24 54/631
 10/04/24 10/07/24 54/634
 10/01/24 10/14/24 54/644
 10/01/24 10/07/24 54/632
 10/31/24 11/11/24 54/661
 11/07/24 11/11/24 54/662
 12/05/24 12/09/24 54/671
 12/10/24 12/24/24 54/680
 12/30/24 01/01/25 54/684
 12/30/24 01/01/25 54/684
 12/19/25 12/22/25 65/57
 02/11/26 02/16/26 65/87
 06/13/26 07/02/26 65/130
 06/13/26 07/02/26 65/130
 05/12/59 07/01/59 264/531
 06/30/59 07/14/59 265/207
 06/29/59 07/14/59 265/203
 02/18/25 02/20/25 54/722
 10/15/29 10/22/29 74/149
 11/08/29 11/12/29 74/156
 12/11/33 12/27/33 79/165
 12/01/31 01/16/32 74/479
 09/28/34 09/29/34 79/242
 10/22/34 10/24/34 79/296
 05/23/44 09/26/44 114/48
 05/25/44 09/26/44 114/47
 10/25/44 10/31/44 114/71
 09/14/50 10/19/50 163/493
 09/27/50 10/19/50 163/494
 07/30/52 08/07/52 184/219
 09/27/55 09/30/55 18/408
 03/13/58 03/27/58 249/232
 12/03/57 03/27/58 249/234
 03/11/58 03/27/58 249/236
 01/29/58 03/27/58 249/238
 02/20/58 03/27/58 249/240
 03/21/58 03/27/58 249/242
 02/25/58 03/27/58 249/244
 12/11/57 03/27/58 249/246
 12/03/57 03/27/58 249/248
 03/19/58 03/27/58 249/250
 02/19/58 03/27/58 249/252
 05/09/58 06/10/58 251/360"61
 05/15/58 06/10/58 251/362"63
 05/09/58 06/10/58 251/364"65
 05/05/58 06/24/58 252/22
 02/17/59 03/03/59 260/220
 09/16/58 09/23/58 255/96
 07/01/59 08/13/59 266/112
 06/26/59 08/13/59 266/142
 06/26/59 08/13/59 266/132
 06/29/59 08/13/59 266/118
 06/29/59 08/13/59 266/120
 06/26/59 08/13/59 266/122
 07/07/59 08/13/59 266/124
 07/02/59 08/13/59 266/126
 06/29/59 08/13/59 266/134
 07/01/59 08/13/59 166/114
 08/05/59 08/13/59 266/144
 08/18/59 08/24/59 266/285
 07/01/59 08/13/59 266/116
 06/26/59 08/13/59 266/128
 07/02/59 08/13/59 266/136
 07/02/59 08/13/59 266/138
 07/26/60 07/28/60 276/547
 05/17/65 05/17/65 337/234
 05/17/65 05/17/65 337/240
 05/17/65 05/20/65 337/320
 05/17/65 05/20/65 337/323
 05/26/65 06/02/65 338/28
 06/02/65 06/24/65 338/480
 05/20/65 06/24/65 338/492
 07/01/65 07/06/65 339/157
 07/01/65 07/06/65 339/163
 07/16/65 07/20/65 339/484
 07/29/65 08/03/65 340/232
 07/06/65 08/09/65 340/349
 09/20/65 10/01/64 342/208
 01/04/65 01/14/65 332/431
 02/04/65 02/11/65 333/468
 06/29/65 07/01/65 339/327
 06/29/65 07/14/65 339/343
 06/29/65 07/14/65 339/340
 06/29/65 07/14/65 339/336
 06/29/65 09/25/65 342/95
 10/09/65 10/13/65 342/449
 09/29/66 10/17/66 356/267
 08/13/57 09/03/57 243/247
 08/12/57 09/03/57 243/249
 08/12/57 09/03/57 242/251
 08/12/57 09/03/57 243/253
 08/16/57 09/03/57 243/255
 08/08/57 09/03/57 243/257
 09/04/57 09/06/57 243/318
 09/04/57 09/06/57 243/320
 02/02/59 03/26/59 261/149
 02/17/59 03/26/59 261/153
 12/01/67 12/01/67 370/482
 01/25/68 02/01/68 372/437
 02/07/68 03/07/68 374/9
 02/08/68 03/07/68 374/13
 09/28/67 10/13/67 369/48
 02/12/67 12/18/67 371/265
 12/13/67 12/18/67 371/2707
 11/16/67 11/29/67 370/427
 10/10/67 10/13/67 369/51
 11/29/67 01/23/68 372/281
 11/08/67 11/29/67 370/415
 12/28/67 01/05/68 372/14
 02/13/68 02/15/68 373/100
 02/15/68 02/21/68 373/230
 02/13/68 02/15/68 373/98
 04/03/69 04/08/69 388/231
 04/07/38 04/15/38 87/569
 04/11/38 04/15/38 87/571
 03/23/38 04/15/38 87/573
 04/09/38 04/15/38 87/571
 04/09/38 04/15/38 87/568
 04/09/38 04/15/38 87/573
 03/24/38 03/25/38 87/552
 04/11/38 04/15/38 87/568
 05/12/38 05/13/38 87/600
 04/09/38 04/15/38 87/572
 04/12/38 05/29/38 87/592
 04/09/38 04/15/38 87/570
 04/20/38 04/22/38 87/583
 03/18/38 04/23/38 87/584
 11/13/66 12/15/66 358/183
 05/17/67 01/24/68 372/310
 05/26/67 06/07/67 363/569
 05/26/67 06/07/67 363/572
 12/13/66 12/15/66 358/180
 02/10/59 03/26/59 261/151
 03/27/68 04/09/68 375/362
 03/27/68 05/01/68 376/298
 09/04/68 09/05/68 381/82
 03/28/59 04/01/59 261/306
 03/27/68 04/29/68 376/242
 02/12/68 02/12/68 373/15
 02/08/68 02/12/68 373/18
 02/13/68 02/20/68 373/168
 03/15/68 03/16/68 374/291
 03/14/68 03/16/68 374/294
 03/25/68 03/26/68 374/584
 04/01/68 04/04/68 375/227
 03/27/68 04/04/68 375/230
 03/28/68 04/04/68 375/233
 03/29/68 04/04/68 375/236
 03/21/68 04/04/68 375/240
 03/29/68 04/04/68 375/244
 04/09/68 04/10/68 375/370
 04/12/68 04/13/68 375/435
 04/12/68 04/13/68 375/438
 04/09/68 04/18/68 375/534
 04/09/68 04/18/68 375/538
 04/20/68 04/23/68 376/81
 04/15/68 04/23/68 376/84
 04/26/68 04/30/68 376/253
 05/06/68 05/07/68 376/461
 05/15/68 05/16/68 377/21
 05/13/68 05/16/68 377/18
 05/23/68 05/24/68 377/248
 06/17/68 06/20/68 378/285
 07/11/68 07/17/68 379/215
 07/05/68 07/17/68 379/218
 10/24/68 10/28/68 383/33
 12/28/68 01/07/69 385/258
 03/11/69 03/13/69 387/282
 07/07/69 07/18/69 392/153
 06/14/69 07/18/69 392/156
 07/09/69 07/18/69 392/160
 08/05/69 08/06/69 393/32
 08/06/69 08/29/69 393/494
 09/18/69 09/23/69 394/411
 09/18/69 09/23/69 394/415
 10/07/69 10/22/69 395/407
 11/07/69 11/10/69 396/102
 11/24/69 12/06/69 397/154
 11/24/69 12/08/69 397/149
 01/26/70 02/02/70 398/449
 01/28/70 02/02/70 398/455
 01/28/70 02/02/70 398/452
 04/23/68 02/02/70 398/459
 10/14/68 02/16/73 Judgment
 Roll No.
 36800/
 Box 939
 04/04/70 04/14/70 401/209
 07/30/69 08/18/69 393/245
 02/14/71 02/23/71 98/476
 07/29/70 02/23/71 98/477
 01/21/29 02/21/30 74/159
Lancaster County, South Carolina
 05/13/54 05/19/54 J4/29
 07/20/55 08/02/55 MA/?
 12/21/37 12/22/37 I"3/63
 12/21/37 12/22/37 I"3/64
 01/04/38 01/04/38 I"3/88
 01/04/38 01/04/38 I"3/91
 01/03/38 01/04/38 I"3/85
 01/03/38 01/04/38 I"3/84
 06/01/38 06/06/38 I"3/180
 04/15/38 04/15/38 I"3/156
 05/01/38 ? ?
 01/03/38 01/04/38 I"3/81"82
 01/04/38 01/04/38 I"3/90
 03/15/38 05/11/38 15/551
 06/03/38 07/25/38 I"3/195"96
 04/01/38 07/20/38 I"3/193"94
 01/04/38 01/14/38 I"3/86"87
 03/10/38 03/25/38 I"3/139"40
 01/11/38 01/12/38 I"3/102
 01/12/38 01/12/38 I"3/104
 01/04/38 01/04/38 I"3/89
 01/03/38 01/04/38 I"3/83
 01/11/38 01/12/38 I"3/101
 04/05/38 04/13/38 I"3/155
 01/26/38 01/26/38 I"3/116"17
 07/06/67 ? ?
 05/13/68 05/16/68 Z"5/245
 05/03/68 05/17/68 Z"5/255
 05/23/68 05/28/68 Z"5/335
 05/25/68 05/28/68 Z"5/338
 05/27/68 05/28/68 Z"5/336
 05/27/68 05/28/68 Z"5/339
 05/28/68 06/06/68 Z"5/391
 05/25/68 07/09/68 Z"5/527
 07/03/68 07/09/68 Z"5/523
 06/11/68 07/09/68 Z"5/526
 07/03/68 07/09/68 Z"5/524
 07/31/68 08/13/68 Z"5/673
 07/15/68 09/18/69 Z"5/2591
 10/26/68 11/13/68 Z"5/1056
 06/11/68 12/23/68 Z"5/1204
 02/10/69 02/20/69 Z"5/1470
 02/20/69 04/15/69 Z"5/1745
 12/04/68 07/17/69 Z"5/2268
 06/10/69 07/17/69 Z"5/2269
 08/08/69 08/26/69 Z"5/2585
 10/07/69 10/20/69 Z"5/2749
 09/22/69 10/22/69 Z"5/2753
 11/20/69 11/25/69 Z"5/2919
 11/21/69 12/06/69 Z"5/2967
 02/24/70 03/02/70 A"6/304
 03/03/70 03/05/70 A"6/326
 05/05/70 05/18/70 A"6/642
Chester County, South Carolina
 01/04/17 01/09/17 167/64
 02/13/34 02/13/34 269/215
 02/13/34 02/19/34 269/217
 02/06/34 02/19/34 269/218
 02/12/34 02/19/34 269/218
 01/30/34 02/21/34 269/219
 02/21/34 02/23/34 269/221
 03/07/34 02/31/34 269/228
 07/31/34 09/17/34 269/259
 09/21/49 10/21/49 357/200
 11/26/53 12/10/53 375/141
 01/28/54 02/11/54 379/91
 10/07/53 03/12/54 375/199
 10/18/51 12/21/51 D"4/302
 02/22/68 04/30/68 Z"5/143
York County, South Carolina
 09/28/68 10/15/68 382/321
 07/03/68 07/05/68 378/548
 07/08/15 07/12/15 43/327
 07/25/60 07/28/60 276/550
 03/28/59 04/01/59 261/302
 04/15/69 04/16/69 388/369
 10/11/24 10/14/24 54/641
 07/27/23 01/15/24 59/311
 10/11/24 10/14/24 54/640
 05/02/67 05/12/67 363/45
 11/22/66 12/01/66 357/505
 11/19/29 11/27/29 74/159
 10/23/67 10/25/67 369/308
 01/13/69 01/17/69 385/403
 11/16/67 11/20/67 370/260
 07/13/68 08/13/68 380/217
 04/12/65 04/20/65 336/168
 03/27/68 04/29/68 376/239
 01/03/36 01/29/36 86/135
 08/13/66 08/23/66 354/355
 01/31/56 02/10/56 223/394
 10/16/41 10/21/41 98/516
 01/31/56 02/10/56 223/399
 11/19/29 11/26/29 74/158
 04/06/68 04/08/68 375/343
 06/15/68 06/17/68 378/194
 02/16/68 02/19/68 373/152
 03/07/68 03/07/68 374/1
 02/13/68 02/15/68 373/88
 12/16/67 12/18/67 371/273
 
 
 101
 Summary judgment is affirmed as to the following tracts for that portion of the
 
 
 102
 land that is below 570 feet above mean sea level:
 
 
 103
 05/28/26 08/30/26 65/146
 07/08/24 07/12/24 61/145
 12/09/24 12/18/24 62/178
 09/17/24 10/03/24 62/3
 09/08/24 09/17/24 61/283
 07/29/25 08/13/25 64/132
 09/22/24 10/01/24 54/628
 07/08/24 07/10/24 61/134
 09/24/24 10/01/24 54/623
 11/17/24 11/19/24 62/104
 05/03/28 05/11/28 71/251
 03/19/09 01/07/10 29/778"80
 09/17/24 10/03/24 61/314
 11/25/24 12/04/24 62/144
 06/14/04 08/13/04 24/187"88
 12/16/25 01/15/26 66/166
 10/14/24 10/18/24 62/36
 03/17/25 03/24/25 63/128
 07/31/24 08/09/24 61/183
 07/24/25 08/05/25 64/137
 12/30/10 01/02/11 32/56
 07/31/24 08/09/24 54/599
 08/08/24 08/16/24 61/208
 09/10/24 09/17/24 54/616
 06/04/24 06/07/24 61/69
 07/08/24 07/12/24 61/143
 03/31/24 04/02/24 60/243
 03/29/24 04/02/24 60/244
 03/19/09 01/07/10 29/773"76
 03/19/09 01/07/10 29/776"78
 05/11/00 06/13/00 19/621"33
 05/10/32 06/01/32 74/540
 12/19/27 12/21/27 65/303
 09/01/25 12/05/25 65/48
 Amend., A & B, (1015"1018) III (all
 tracts
 below)
York County, South Carolina
 05/11/00 06/13/00 19/621"633
 09/01/25 12/05/25 65/48
 09/01/25 12/05/25 65/53
 12/19/27 12/21/27 65/303
 05/10/32 06/01/32 74/540
 08/05/36 08/05/36 87/138
 05/28/26 08/30/26 65/146
 07/08/24 07/12/24 61/145
 12/09/24 12/18/24 62/178
 09/17/24 10/03/24 62/3
 09/08/24 09/17/24 61/283
 07/29/25 08/13/25 64/132
 09/22/24 10/01/24 54/628
 07/08/24 07/10/24 61/134
 09/24/24 10/01/24 54/623
 11/17/24 11/19/24 62/104
 05/03/28 05/11/28 71/251
 03/19/09 01/07/10 29/778"80
 09/17/24 10/03/24 61/314
 11/25/24 12/04/24 62/144
 06/14/04 08/13/04 24/187"88
 12/16/25 01/15/26 66/166
 10/14/24 10/18/24 62/36
 03/17/25 03/24/25 63/128
 06/05/24 06/07/24 61/68
 07/31/24 08/09/24 61/183
 09/08/24 09/17/24 61/283
 07/24/25 08/05/25 64/137
 12/30/10 01/02/11 32/56
 07/31/24 08/09/24 54/599
 08/08/24 08/16/24 61/208
 09/10/24 09/17/24 54/616
 06/04/24 06/07/24 61/69
 03/19/26 04/09/26 2"P/19
 Plat Book
 07/08/24 07/12/24 61/143
 03/31/24 04/02/24 60/243
 03/29/24 04/02/24 60/244
 03/19/09 01/07/10 29/773"76
 03/19/09 01/07/10 29/776"78
 05/11/00 06/13/00 19/621"33
 05/10/32 06/01/32 74/540
 12/19/27 12/21/27 65/303
 09/01/25 12/05/25 65/48
 05/21/30 05/28/30 74/231
 05/18/25 12/24/25 65/61
 09/03/24 09/17/24 54/623
 09/24/24 10/01/24 54/623
 09/08/24 09/17/24 54/617
 09/23/24 10/01/24 54/622
 09/01/25 12/05/25 65/53
 06/27/36 08/05/36 87/138
 Defendant Portion of Judgment Order Describing Section of
 Parcel this
 Opinion
 Addressing
 Objections
 
 
 104
 11. Crescent Resources, One, Q, (901) III, n. 5
 
 
 105
 Inc. (All
 
 
 106
 tracts*)
 Land conveyed to Crescent by D.M.
 Creech and Margaret F. Creech by deed
 dated December 29, 1983, and recorded
 in the Office of the Clerk of the
 Court for York County, South
 Carolina, on December 29, 1983, in
 Deed Book 736 at page 298.
 Two, B, (957"958) IV"A, III,
 n. 5 (All
 tracts*)
 Date of Deed Recordation Date Book/Page
 03/27/70 03/27/70 400/466
 05/22/70 05/22/70 402/527
 03/27/70 03/27/70 400/463
 03/27/70 03/27/70 400/470
 03/27/70 03/27/70 400/468
 05/22/70 05/27/70 402/521
 05/14/70 05/18/70 402/309
 06/03/70 06/09/70 403/259
 05/22/70 05/27/70 402/524
 06/03/70 08/10/70 405/369
 
 
 107
 12. State of South One, R, (902"905) III (All
 
 
 108
 Carolina tracts*)
 
 
 109
 Date of Conveyance Book Page
 06/02/1893 M13 1
 06/31/05 25 157
 12/30/1893 134 385
 02/01/07 27 208
 04/24/1897 20 655
 03/05/29 73 153
 02/??/29 65 548
 02/??/29 65 546
 02/25/29 73 155
 06/03/19 50 6
 10/06/20 48 189
 10/04/20 53 205
 04/15/19 50 4
 07/06/20 53 17
 02/19/41 103 198
 06/04/30 76 455
 06/04/30 76 457
 02/26/29 73 154
 07/02/20 48 736
 11/15/20 ? ?
 09/24/10 37 97
 08/21/19 50 5
 07/20/20 52 13
 02/19/41 103 199
 03/16/56 231 444
 08/31/26 68 19
 10/02/19 48 344
 08/16/19 44 662
 07/01/19 49 369
 05/14/20 ? ?
 06/24/20 53 99
 07/29/20 44 716
 04/24/1897 20 653
 02/20/06 26 172
 07/12/06 26 649
 01/31/06 25 595
 02/23/06 26 174
 01/20/22 56 155
 01/11/26 66 181
 01/11/26 65 73
 02/22/22 56 128
 07/01/07 28 186
 03/12/19 44 569
 11/27/05 26 173
 04/24/1897 20 651
 08/07/61 289 314
 08/31/18 47 132
 07/29/18 47 210
 05/17/19 44 636
 06/02/19 44 621
 05/17/61 286 453
 08/23/29 75 161
 12/28/12 40 321
 12/06/12 40 302
 12/06/12 36 624
 12/16/12 36 622
 09/29/25 64 209
 12/31/25 66 133
 07/29/20 53 123
 12/12/18 47 258
 01/12/20 51 122
 12/18/18 47 256
 02/20/63 308 507
 08/17/48 140 88
 10/28/30 77 131
 12/23/11 38 389
 12/19/11 38 390
 08/02/65 340 220
 03/04/10 35 331
 12/28/15 45 41
 11/14/1893 M13 112
 05/27/32 81 18
 10/01/62 305 453
 09/27/62 305 457
 04/26/63 311 553
 
 
 110
 13. Southern Railway One, S, (906"916) III, n. 5
 
 
 111
 Company (All
 
 
 112
 tracts*)
Date of Conveyance Book Page
 9/22/1848 P 450
 10/02/1848 O 366
 09/23/1848 O 367
 09/23/1848 O 367
 03/01/1899 18 575
 05/05/1853 Q 143
 10/11/48 129 335
 09/26/1848 O 365
 09/22/1848 O 364
 Deed from Dr. William Moore to C & S C.P. Railroad dated April 25, 1949
 11/21/02 22 541
 11/21/02 22 541
 Memorandum of Agreement Town of Fort Mill dated 07/17/24
 03/01/40 98 228
 Ordinance from the Town of Fort Mill dated 03/06/40
 03/01/40 98 228
 Agreement Deed Book 129 at page 335 dated 10/11/48
 Deed dated 9/21/56 from Springs Foundation, Inc.
 Deed from Dr. William Moore dated 4/25/1849
 Deed from J.L. Moore dated 7/24/1854
 Deed from William E. White dated 02/07/1856 and recorded in Deed Book R at
 page 37
 09/20/1848 O 460
 06/13/01 21 736
 04/8/20 44 783
 1/15/1917 44 266
 09/12/46 114 396
 5/18/46 124 177
 Deed from Eli Biggers dated 12/22/1847
 Condemnation Proceeding Robert Miller Spring term 1853
 Deed from James Moore by J.C. Moore dated 12/22/1848
 Jane McNair and Jane Henry dated 12/22/1847
 9/20/1848 O 459
 9/19/1848 O 460
 Deed from James Workman dated 12/22/1847
 Deed from J.C. Moore dated 12/12/1848
 9/20/1848 O 463
 Deed P 450 dated 10/21/1851
 Deed 23 at page 68 dated 5/26/1903
 Deed 39 at Page 71 dated 12/19/1911
 Deed Q at Page 251 dated 2/14/53
 Deed 100 at Page 233 dated 6/30/43
 Deed 19 at page 472 dated 3/26/1900
 Deed 22 at page 473 dated 11/24/1902
 Deed 35 at page 563 dated 3/10/1911
 Deed 35 at page 567 dated 3/10/1911
 Agreement with Catawba Lumber Company dated 2/9/18
 Deed from Victoria Cotton Mills dated 6/1/1916
 11/21/1918 44 523
 Deed 100 at page 233 dated 6/30/43
 Deed 176 at page 334 dated 10/16/51
 Deed from James Workman dated 12/22/1847
 9/19/1848 and O 462
 9/1/1848
 9/18/1848 O 459
 9/5/1848 O 575
 7/22/65 341 446
 9/5/1848 O 461
 9/16/1848 O 463
 Deed GG at page 495 dated 7/4/1849
 4/4/1850 GG 614
 7/12/1849 GG 49G
 5/10/1887 E"6 706
 Deed E"6 at page 712"3 dated 6/16/1887
 Deed E"6 page 708"9/10 dated 6/16/1887
 6/16/1887 E"6 712"3
 9/7/1888 F"7 712"13
 6/15/1887 E"6 716
 6/1/1887 E"6 712"3
 6/11/1887 E"6 710"11
 2/25/1900 29 514
 6/15/1887 E"6 714
 8/20/1918 44 479
 11/1/1961 293 258
 6/15/1887 E"6 714
 10/1889 J"10 735
 9/21/1888 F"7 673
 9/21/1888 E"7 675
 Deed from F.H. Barber dated 3/30/1906, Deed E"6, page 6
 98"1 dated 5/9/1887
 5/8/1888 J"10 725"6
 9/21/1888 F"7 676
 9/21/1883 F"7 688
 5/10/1890 E"6 692"3
 5/1887 E"6 695
 2/1/1886 J"10 723
 5/9/1887 E"6 694
 1880 E"6 686
 Condemnation involving property of W.H. Cowan dated 7/5/1889
 Condemnation involving property of Mr. R.B. Cowan dated 2/10/1888
 Property of R.M. Cowan judgment dated 11/21/1889
 Condemnation R.H. Cowan 11/11/1889
 5/21/1887 E"6 704
 9/4/1906 26 443
 Condemnation involving property of W.I. Steele dated 4/30/1889
 9/10/1913 39 398
 Condemnation involving property of Samuel L. Fewell dated 2/11/1888,
 Judgment Roll 1710
 10/30/1911 44 194
 9/10/1913 39 398
 Condemnation involving property of Mrs. Margaret S. Kimbrell dated
 4/30/1888, Judgment Roll 1753
 1/23/1904 23 550"3
 1/25/1904 23 550"3
 Condemnation proceeding involving property of Larry W. White dated
 5/18/1888, Judgment roll 1750
 Condemnation involving property of A.H. White, James S. White, Mary E.
 White, A.H. White and Mrs. A.R. Witherspoon dated 1/24/1888, Judgment
 rolls 1752 and 1751
 10/18/1901 29 666
 Condemnation involving property of Isabella Wilson October term 1920
 10/18/09 29 666
 Condemnation involving the property of J.S. White, et al. dated 1/24/1885,
 Judgment Roll 1751
 Ordinance City of Rock Hill, Minute Book 425 dated 8/20/45
 3/25/09 29 602
 3/25/1908 29 259
 Condemnation involving the property of Fewell, Judgment Roll 1900
 Deed from A.D. Holler dated 5/24/1896
 Condemnation involving property of Isabella H. Wilson, Executrix, October
 term 1920
 Deed from A.D. Holler dated 3/22/1890
 2/13/1905 24 732
 Condemnation of property of Samuel A. Fewell dated 2/11/1888, Judgment
 roll 1720
 Condemnation of property of W.A. Fewell dated 7/22/1887, Judgment roll
 1716
 Condemnation involving property of Robert Morrison, Judgment roll 1884
 4/11/1887 E"6 700"1
 4/11/1887 E"6 790"791
 4/11/1887 E"6 758"9
 4/9/1887 F"7 17
 Condemnation of property of J.A. Rainey dated 4/16/1889, Judgment roll
 1905
 4/11/1887 E"6 770"1
 9/22/1887 F"7 673
 4/11/1887 E"6 798
 9/22/1913 39 386
 6/2/1888 F"7 565"6"7
 3/26/1888 J"10 727
 9/10/1901 21 466"7
 10/5/1901 23 792"3
 Deed from Yorkville Cotton Oil Co. dated 10/22/1915
 8/4/11 38 169
 3/26/1888 E"J"10 727
 8/4/1911 38 189
 6/23/1911 38 17
 11/25/1907 38 779
 7/24/1894 24 7
 Condemnation of property of William C. Latimer dated 8/31/1887, Judgment
 roll 1717
 Resolution Town Council of Yorkville dated 6/16/1887
 4/11/1887 E"6 798
 4/11/1887 E"6 770"1
 4/9/1887 F"7 50
 5/26/1887 F"7 1
 6/2/1888 F"7 567"68
 4/9/1887 F"7 52
 4/9/1887 F"7 15
 Condemnation involving property of A. Avery dated 6/18/1888, Judgment roll
 1787
 6/28/1887 F"7 337
 7/4/1887 J"10 722
 Condemnation involving property of D.S. Thornbury dated 6/18/1888,
 Judgment roll 1788
 6/26/1867 F"7 339
 6/24/1887 E"6 721
 7/25/1887 F"7 335
 6/21/1887 E"6 749
 7/25/1887 F"7 335
 6/7/1887 E"6 751
 7/16/1887 E"6 756"57
 5/10/1887 E"6 698
 8/29/1887 F"7 334
 8/29/1887 F"7 334
 6/27/1887 F"7 563
 6/1887 F"7 562
 5/21/1887 E"6 706"7"8
 Condemnation of property of B.D. Wheeler dated 8/25/1887, Judgment roll
 1715
 4/13/1887 E"6 788"9
 5/27/1887 F"7 7
 4/13/1887 E"6 788"9
 4/12/1887 E"6 794"5
 4/13/1887 E"6 788"9
 4/12/1887 E"6 792
 4/4/1887 F"7 25
 3/8/1889 G"8 657
 Decree involving property of Mrs. Eudora Plexico, et al dated 2/3/34
 4/4/1887 F"7 25
 3/8/1889 G"8 657
 4/12/1887 F"7 3
 3/4/1887 E"6 768"9
 3/4/1887 E"6 766"7
 3/4/1887 F"7 27
 3/4/1887 F"7 13
 3/4/1887 F"7 48
 3/4/1887 F"7 13
 6/27/56 230 280
 3/4/1887 F"7 13
 3/4/1887 F"7 11
 4/12/1887 F"7 32
 3/2/1887 F"7 498
 5/3/1887 F"7 30
 3/2/1887 E"6 764"5
 5/6/1887 E"6 772"3
 5/6/1887 E"6 772"3
 5/6/1887 F"7 34
 5/3/1887 F"7 30
 3/1/1887 E"6 760"1
 3/1/1887 E"6 778"9
 4/7/1877 F"7 5
 3/1/1887 E"6 796"7
 3/1/1887 E"6 774"5
 9/21/1889 G"8 655
 3/4/1887 F"7 19"20
 3/1/1887 E"6 786"7
 9/21/1889 G"8 655
 3/2/1887 F"7 46
 3/1/1887 E"6 780"1
 7/1/1890 71 613
 8/10/1907 6 20
 11/9/1887 Q 70
 11/14/1877 Y 17
 11/14/1896 U 138
 6/12/1875 A"1 164
 3/2/1887 Q 70
 11/14/1871 Y 12
 4/29/1910 37 57
 2/15/1891 P 299
 1/17/09 74 680
 12/12/1854 Q 551
 1/12/1903 72 549
 10/30/09 23 163
 7/17/1891 A"11 73
 7/24/1891 A"11 34
 8/5/1896 17 762
 4/14/1904 33 393
 4/10/1907 29 683
 Agreement Victor Cotton Oil Co. 4/18/1902
 8/30/1907 22 307
 5/19/1903 77 23
 5/25/1903 29 377
 Agreement Beverly Mfg. Co. dated 10/15/1903
 12/8/1906 66 87
 12/4/1902 22 790
 Deed from M.J. Brown dated 9/1/1903
 Deed from B.M. Smith, et al. dated 11/14/1901
 6/23/1901 96 470
 7/8/1901 90 467
 4/26/02 7 297
 4/8/1902 7 279
 4/21/1902 7 279
 4/17/09 29 3
 Agreement Hawthorne Spinning Mills 1/29/1906
 Agreement Clover Cotton Mills 7/10/1909
 Agreement W.D. Reynolds 11/15/1916
 Deed 27"656 dated 9/17/1907
 Deed 36"525 dated 2/20/1912
 1/27/1899 16 234
 4/26/1942 100 63
 
 
 113
 14. Bowater, Inc. One, T, (917"919) III (All
 
 
 114
 tracts*)
 547"00"00"045 II (farm)
Date of Conveyance Book Page
 6/22/62 300 146
 6/22/62 300 144
 6/22/62 100 142
 8/30/56 231 63
 10/17/56 232 443
 8/31/56 231 108
 8/29/56 231 85
 8/29/56 231 87
 9/1/56 231 111
 8/23/56 232 129
 11/2/56 233 124
 8/23/56 233 122
 8/29/56 231 60
 8/29/56 231 66
 8/29/56 231 73
 8/29/56 231 76
 8/29/56 231 79
 8/29/56 231 82
 8/29/56 231 54
 8/29/56 231 51
 8/27/56 231 60
 6/20/56 233 102
 8/9/56 233 112
 8/18/56 233 114
 8/31/56 233 120
 9/7/56 233 117
 8/29/56 232 293
 10/13/56 232 296
 8/31/56 231 120
 Three, V, (995) III (All
 tracts*)
Date of Conveyance Book Page
 9/20/60 279 44 II (dates)
 9/1/60 278 158 II (dates)
 11/14/61 294 61 II (dates)
 8/1/85 838 205 n. 10
 II (tree)
 VI
 10/9/61 291 340 II (tree)
 10/6/86 ? ? II (tree)
 10/25/65 343 311 II (tree)
 9/16/69 394 284 II (tree)
 4/11/59 V4 221 II (tree)
 12/21/84 798 276 II (tree)
 2/14/86 904 111 II (tree)
 7/31/86 898 7 II (tree)
 8/86 899 296 II (tree)
 
 
 115
 Defendant Portion of Judgment Order
 
 DescribingParcelSection of this
 Opinion Addressing Objections
 
 116
 15. Nisbet Properties One, U, (920) n. 5, n. 10, III,
 VII (All
 tracts*)
 Tax Map Number
 22"00"01.00 IV"E, F
 II (tree)
 VI
 13"00"100.00 IV"F
 II (tree)
 VI
 19"00"01.00 II (tree)
 19 VI
16. John M. Spratt, Jr. One, V, (921) III (All
 tracts
 below)
 Tract 1 n. 5
 (Tax Map 20"01"22"12)
 Tract 2 (922)
 (Tax Map 708"17;
 21"01"21"02 and
 20"06"01"50)
 Tract 3, (924)
 (Part of Tax Map 708"17)
 Tract 4, (925)
 (Part of Tax Map 708"17)
 Tract 5, (925"926)
 (Part of Tax Map 708"17)
 Tract 7, (927"930)
 (Part of Tax Map 708"17)
 Tract 8, (930)
 (Part of Tax Map 708"17)
 Tract 9, (930"931)
 (Part of Tax Map 708"17)
 Tract 10, (931"932)
 (Part of Tax Map 708"17)
 Tract 11, (932"933)
 (Part of Tax Map 708"17)
 Tract 12, (933)
 (Part of Tax Map 708"17)
 Tract 13, (933"934)
 (Part of Tax Map 708"17)
 Tract 14, (934"935)
 (Tax Map 661"14)
 Tract 15, (935"936)
 (Tax Map No. 708"18)
 Tract 16, (936)
 (Tax Map 661"00"00"014)
 Tract 17, (936"937)
 (Tax Map 020"02"01"006)
17. Hiram Hutchison, One, W, (938"940) III, n. 5
 Jr. (All
 tracts*)
Parcel 1--Tax Map 664"00"00"012
Parcel 2--Tax Map 664"00"00"011
Parcel 3--Tax Map 627"18"04"003
18. J. Max Hinson One, X, (941"946) III (All
 tracts
 below)
 Tract 3--Tax Map 20"1.00
 Tract 5--Tax Map 707"1 II (poss.)
 Tract 10--Tax Map 659"232
 Tract 23--Tax Map 740"1
 Tract 25--Tax Map 20"4"34"4
 Three, W, (998) III, n. 5
 (All
 tracts
 below)
(All tracts in York County, except Tract 4, which is in Lancaster County)
 Tract 1--Deed Book 132, page 26
 Tract 2--Deed Book 165, page 183
 Tract 4--Deed Book X"5, page 494 II (poss.)
 Tract 6--Deed Book 358, page 480 II (poss.)
 Tract 8--Deed Book 248, page 97
 Tract 9--Deed Book 220, page 128 II (cont.)
 Tract 11--Deed Book 182, page 26 II (cont.)
 Tract 12--Deed Book 353, page 346 II (cont.)
 Tract 13--Deed Book 337, page 532 II (poss.)
 Tract 14--Deed Book 242, page 454 II (cont.)
 Tract 15--Deed Book 286, page 398 II (cont.)
 Tract 16--Deed Book 270, page 485 II (cont.),
 n. 5
 Tract 17--Deed Book 259, page 447 II (cont.),
 n. 5
 Tract 18--Deed Book 217, page 361 II (cont.),
 n. 5
 Tract 19--Deed Book 205, page 96 II (cont.),
 n. 5
19. Arnold F. Marshall One, Y, (947) III (All
 tracts
 below)
 Deed dated 1/18/66 recorded in Deed
 Book 222, page 152 on 1/28/66, York
 County
 Deed dated 3/30/51 recorded in Deed
 Book 169, page 303 on 4/3/51; and
 deed dated 8/18/51 recorded __/21/51
 in Deed Book 174, page 166
 Deed dated 4/13/54 recorded in Deed
 Book 203, page 184
20. Ashe Farms Three, F, (974) III, n. 5
 (All
 tracts*)
 Tax Map 14"25 II (dates)
 Tax Map 15"2.0 II (dates)
 Tax Map 15.33 II (dates)
 Tax Map 24"1.0 II (dates)
 Tax Map 25N"OA"2.0 II (dates)
 Tax Map 25"10 II (dates)
 Tax Map 25"10.01 II (dates)
 Tax Map 764.5 II (dates)
 Tax Map 15"20 II (dates)
 II (cont.)
21. Hugh White Three, H, (976)
 Tax Map 705"00"00"001
22. T.W. Hutchison Three, K, (979"980) III, n. 5
 (All
 tracts
 below)
 664"01"03"008 II (poss.)
 664"01"06"014 II (poss.)
 664"01"06"019 II (poss.)
 664"01"06"018 II (poss.)
 664"01"06"017 II (poss.)
 664"01"06"007 II (poss.)
 664"01"06"008 II (poss.)
 664"01"06"023 II (poss.)
 664"01"06"016 II (poss.)
 664"01"06"015 II (poss.)
 664"01"03"002 II (poss.)
 664"01"02"003 II (poss.)
 664"01"04"002 II (poss.)
 664"01"06"024 II (poss.)
 664"01"06"013 II (poss.)
 664"00"00"022 II (poss.)
 II (dates)
 634"07"01"021 II (poss.)
 II (dates)
 664"00"00"019 II (dates)
 664"01"02"002
 627"14"02"002
 664"06"06"025 II (dates)
 664"00"00"021 II (dates)
23. Robert A. Fewell Three, L, (981) III (All
 tracts*)
 Tax Map 617"00"00"026
 Tax Map 616"00"00"032
 Tax Map 680"00"00"022
 Tax Map 608"00"00"024
24. Francis M. Mack Three, M, (982) III (All
 tracts*)
 774"00"00"005 II (tree)
 II (farm)
 II (dates)
 020"06"06"016
25. John S. Simpson Three, N, (983) n. 5, n.
 10, II
 (poss.),
 III, VI
 (All
 tracts*)
 Tax Map 600"07"06"001
 Tax Map 600"11"02"035
 Tax Map 600"17"02"012
 Tax Map 627"17"02"018
 Tax Map 627"17"02"016
26. Robert T. Simpson Three, O, (984) III, n. 5
 (All
 tracts*)
 627"17"02"019 n. 10
 II (poss.)
 VI
 600"06"10"029 II (poss.)
 600"07"05"001 n. 10
 II (poss.)
 VI
 600"11"02"035 n. 10
 VI
 627"17"01"012 n. 10
 II (poss.)
 VI
 627"17"02"018 n. 10
 II (poss.)
 VI
 627"17"02"016 n. 10
 II (poss.)
 VI
27. City of Rock Hill Three, Q, (987"989) III, II
 South Carolina (concl.)
 (All
 tracts*)
 Tax Map or Parcel
 627"18"3"4 IV"A
 589"1"1"14 IV"G
 628"9"5"5 n. 10
 VI
 VII
 628"9"5"6 n. 10
 VI
 628"17"3"10 n. 10
 VI
 628"4"1"2 n. 10
 VI
 627"19"1"25 (W. White) VII
 627"19"1"25 (H. White) VII
 627"19"1"25 (Biggers) VII
 627"19"1"25 (LaFar) VII
 627"19"1"25 (Albright) VII
 627"19"1"25 (Roddey) VII
 627"18"4"11 & 13
 627"19"1"23
 627"18"1"9
 630"10"03"010
 627"18"4"6
 630"10"3"14
 630"10"4"6
 630"10"4"5
 630"10"4"4
 596"7"2"2
 630"10"3"12
 630"10"03"008
 630"10"3"13
 630"10"4"7
 630"10"4"3
 630"10"01"002
 628"4"1"1
 627"19"1"23 (Friedheim)
 627"19"1"23 (Johnston)
 589"1"1"21
 627"18"3"12
 627"17"4"10
 626"7"1"2
 667"1"1"4
 589"1"1"4
 627"18"2"1
 589"26"1"1
 589"26"2"1 & 2
 667"1" 1"6
28. Elizabeth Ardrey Three, R, (990"991) II (tree),
 Grimball II (farm),
 III (All
 tracts*)
 Tax Map or Parcel
 743"00"00"003
 709"00"00"025
 709"00"00"023
 709"00"00"020
 709"00"00"019
 709"00"00"018
 020"01"01"020
29. John M. Belk Three, S, (992) II (tree
 fm.)
 963 acres described in II (farm)
 Deed Book 53, page 403 II (dates)
 dated 5/12/47; recorded III
 6/21/47
30. Annie F. Harris Three, T, (993) III
 Tax Map 742"00"00"002
31. William Oliver Three, U, (994) III
 Nisbet
 Tax Map 22"2 V
32. Springs Mills, Inc. Three, X, (1000"1003) II (sp.
 pc.), III
 (All
 tracts*)
Date of Conveyance Book Page
 12/31/31 74 503
 9/20/41 105 106
 4/5/65 335 431
 6/16/88 1033 16
 1/30/75 507 1
 3/1/84 747 170
 10/20/65 343 540
 6/4/70 406 505
 4/14/83 700 14
 1/22/81 626 499
 9/29/41 105 196
 3/15/74 481 62
 9/30/66 357 172
 6/20/50 159 290
 9/27/41 105 198
33. Property Owned by the Close Family
 Three, Y, (1004"1007) II (sp. pc.)
 III (All
 tracts*)
 
 
 117
 Property which has been identified by deed book and page is as follows:
 
 
 118
 Book Page Date of Record
 271 147 1/26/60
 308 125 2/01/63
 362 341 5/01/67
 383 81 10/29/68
 462 483 5/14/73
 521 45 10/14/75
 527 467 3/16/76
 561 607 12/16/77
 570 874 5/10/78
 576 231 8/10/78
 585 703 1/03/79
 601 876 9/07/79
 614 262 5/21/80
 
 
 119
 Property which has been described by tax map code is as follows:
 
 
 120
 Tax Map Code
 020 0101 004
 020 0102 001
 020 0404 001
 020 0406 010
 020 0406 011
 020 0408 022
 020 0408 023
 020 0408 024
 020 0408 025
 020 0408 026
 020 0408 027
 020 0408 028
 020 0408 029
 020 0408 030
 020 0408 031
 020 0408 032
 020 0419 002
 020 0419 013
 020 0419 014
 020 0420 002
 020 0424 014
 020 0429 001
 020 0429 025
 020 0429 026
 020 0429 070
 020 0435 062
 020 0504 008
 020 0901 003
 655 0000 001
 655 0000 003
 655 0000 031
 657 0000 001
 706 0000 001
 706 0000 012
 710 0000 002
 710 0000 005
 710 0000 006
 712 0000 001
 713 0000 059
 713 0000 103
 713 0000 164
 713 0000 165
 713 0000 181
 713 0000 191
 713 0000 200
 713 0000 214
 713 0000 215
 713 0000 216
 714 0000 001
 715 0000 001
 717 0000 016
 730 0000 001
 730 0000 002
 730 0000 006
 732 0000 001
 732 0000 002
 734 0000 006
 Defendant Portion of Judgment Order Describing Section of
 Parcel this
 Opinion
 Addressing
 Objections
 
 34. Elliott S. Close Three, Y, (1006)
 
 121
 Tax Map 642"05 II
 Tax Map 642"034 II (tree)
 II (farm)
 II (poss.)
 Tax Map 642"035 II (tree)
 II (farm)
 II (poss.)
35. Archie B. Carroll Three, Z, (1008) III, VII
 (All
 tracts*)
Date of Conveyance Book Page
 3/30/82 660 84 II (poss.)
 (Tax Map III
 745"00"00"001)
 1/28/52 759 122
 (65 ft. access right of way)
36. W.R. Simpson Three, AA, (1009) III (All
 tracts*)
 600"07"05"001 n. 10
 II (poss.)
 VI
 600"11"02"035 n. 10
 VI
 600"01"01"012 n. 10
 VI
 627"17"02"018 n. 10
 II (poss.)
 VI
 627"17"02"016 n. 10
 II (poss.)
 772"00"00"001 II (date)
 772"00"00"002 II (date)
37. C & S National Bank Three, BB, (1010) II (concl.),
 III (All
 tracts*)
 Tax Parcel Number
 659"227
 719"15
 20"6"1"47
 653"13
 627"20"2"3
 626"141, 158, 159, 176, 177 & 178
 736"092
 546"65
 598"10"01"001
 662"3"1"30
 662"3"1"31
38. Mary A. and W.T. Three, CC, (1011) III (All
 McCorkle tracts*)
 Tax Map 0013"00"037"00
 Tax Map 0013"00"0037"00
39. Springs Industries, Four, A, (1024"1029) II (sp.
 Inc. pc.), III
 (All
 tracts*)
Date of Conveyance Book Page
 12/31/31 74 503
 (Tax Map 020 04 04
 010)
 9/29/41 105 196
 7/12/66 353 327
 4/24/70 402 404
 7/29/70 408 450
 8/25/70 406 500
 8/27/70 406 503
 (Tax Map 020 01 23
 013)
 12/31/31 74 503
 (Tax Map Nos. 02 06
 01 52, 02 06 01
 53, 02 06 07 34)
 1929 73 177
 1929 73 178
 1929 (Cutter) 65 559
 1929 (Seital) 65 559
 1934 79 231
 1935 79 481
 1938 94 267
 1938 94 277
 1938 94 279
 1938 92 303
 1938 92 318
 1940 101 13
 1940 102 83
 1943 111 263
 1943 111 264
 1943 111 261
 1943 111 262
 1937 91 147
 1937 91 148
 1944 115 214
 1945 116 276
 1945 116 277
 1945 116 275
 1945 116 305
 1945 117 1
 1945 117 162
 1950 159 290
 1955 211 311
 1960 274 42
 1948 141 85
 1953 191 95
 Tax Map 598 04 01
 001
 Tax Map 598 04 02
 001
 Tax Map 598 11 01
 001
 Tax Map 598 22 01
 001
 Tax Map 627 20 01
 005
 
 APPENDIX C
 
 122
 The judgment of the district court is VACATED and the cause REMANDED for
 
 
 123
 further action not inconsistent with section III of this opinion as to the
 
 
 124
 following parcels of land. The affidavits supporting the defendants' motions
 
 
 125
 for summary judgment as to these parcels set forth insufficient evidence that
 
 
 126
 the statements therein are based on the personal knowledge of the affiant.
 
 
 127
 Defendant Parcel Section of this
 Opinion Rejecting
 Other Challenges to
 Listed Parcel[3]
1. Arnold F. One, Y, p 4, (947) Property described
 Marshall in deed dated Jan. 9, 1959 and
 recorded Jan. 17, 1959, in deed
 book 258 at page 484, York County.
2. C.H. Three, D, p 3 (972)
 Albright
 620"00"00"005
 620"00"00"008
3. Ned M. Three, E, pp 1, 3"8 (973) n. 5 (all)
 Albright
 548"00"00"070
 627"22"02"029 II (dates)
 II (cont.)
 593"02"01"002
 598"02"01"002 II (dates)
 II (cont.)
 627"22"02"028 II (dates)
 625"12"03"004 II (dates)
 II (cont.)
 600"06"07"006 II (dates)
 II (cont.)
 623"00"00"006 II (tree)
 II (dates)
 623"02"01"005
4. David G. Three, G (975)
 Anderson
 627"22"02"029 II (dates)
 II (cont.)
 598"02"01"001 II (dates)
 II (cont.)
 598"02"01"002 II (dates)
 II (cont.)
 627"22"02"028 II (dates)
 625"12"03"004 II (dates)
 II (cont.)
 600"06"07"006 II (dates)
 II (cont.)
 604"03"01"011 II (dates)
 670"00"00"134 n. 10
5. F.S. Three, J (978) II (dates)
 Barnes,
 Jr.
 639"00"00"095
6. J. Max Three, W (998"999)
 Hinson
 Tract No. 20, York County II (poss.)
 deed book 986, p. 339 n. 5
 Tract No. 21, York County n. 5
 deed book 969, p. 200 II (poss.)
 II (dates)
 Tract No. 22, York County n. 5
 deed book 540, p. 129 II (poss.)
 II (dates)
 Tract No. 24, York County deed book II (dates)
 488, p. 98
 II (cont.)
 Tract No. 26, York County deed book
 644, p. 72
 Tract No. 28, York County deed book II (dates)
 529, p. 561
 Tract No. 30, York County deed book II (poss.)
 467, p. 466
 
 APPENDIX D
 
 128
 The judgment of the district court is VACATED and the cause REMANDED for
 
 
 129
 further action not inconsistent with section IV.B. of this opinion as to the
 
 
 130
 following parcels.
 
 
 131
 Defendant Parcel Section of
 this
 Opinion
 Rejecting
 Other
 Challenges
 to Listed
 Parcel[4]
1. Duke Two, A, (954"956)
 Power
 Co.
 
 
 132
 Summary judgment is vacated and remanded as to the following tracts for that
 
 
 133
 portion of the land that is above 570 feet above mean sea level:
 
 
 134
 Date of Deed Recordation Date Book/Page
 05/28/26 08/30/26 65/146
 07/08/24 07/12/24 61/145
 12/09/24 12/18/24 62/178
 09/17/24 10/03/24 62/3
 09/08/24 09/17/24 61/283
 07/29/25 08/13/25 64/132
 09/22/24 10/01/24 54/628
 07/28/24 07/10/24 61/134
 09/24/24 10/01/24 54/623
 11/17/24 11/19/24 62/104
 05/03/28 05/11/28 71/251
 03/19/09 01/07/10 29/778/80
 09/17/24 10/03/24 61/314
 11/25/24 12/04/24 62/144
 06/??/04 08/13/04 24/187"88
 12/16/25 01/15/26 66?/166
 10/14/24 10/18/24 62/36
 03/17/25 03/24/25 63/128
 06/05/24 06/07/24 61/61
 07/31/24 08/09/24 61/183
 07/24/25 08/05/25 64/137
 12/30/10 01/02/11 32/56
 07/31/24 08/09/24 54/599
 08/08/24 08/16/24 61/208
 09/10/24 09/17/24 54/616
 06/04/24 06/07/24 61/69
 07/08/24 07/12/24 61/143
 03/31/24 04/02/24 60/243
 03/29/24 04/02/24 60/244
 03/19/09 01/07/10 29/773"76
 03/19/09 01/07/10 29/776"78
 05/11/00 06/13/00 19/621"33
 05/10/32 06/01/32 74/540
 12/19/27 12/21/27 65/303
 19/01/25 12/05/25 65/48
 05/01/69 12/22/69 397/361
 09/04/68 09/19/68 381/379
 06/29/70 06/30/70 404/23
 09/07/71 09/07/71 425/37
 08/10/71 12/30/71 430/506
 04/27/64 342/415
 08/01/63 08/02/63 314/392
 
 
 135
 The following properties were transferred by Crescent Land and Timber
 
 
 136
 Corporation (Crescent) to various grantees between July 1, 1972, and July 2,
 
 1974:
 
 137
 Date of Deed Recordation Date Book/Page
 03/05/73 03/09/73 458/232
 12/11/73 02/28/74 479/347
 05/28/74 07/04/74 486/113
 02/01/73 02/02/73 456/60
 12/11/73 01/28/74 477/575
2. C.H. Albright One, E, (861) Deed dated
 1/21/79; Deed Book 589,
 page 536
3. T.W. Hutchison Three, K, p 24 (980) Tax Map III, n. 5
 Number 548"00"00"038
 
 APPENDIX E
 
 138
 The judgment of the district court is VACATED and the causee REMANDED for
 
 
 139
 further action not inconsistent with section IV.C. of this opinion as to the
 
 
 140
 following parcels.
 
 
 141
 Defendant Parcel Section of this Opinion
 Rejecting Other
 Challenges to Listed
 Parcel[5]
1. Bowater Three, V, (996) p 8 (278 acres k-, III
 Corp. conveyed to East Highlands Co. by
 deed recorded in York County Deed
 Book 394 at page 281)
 
 APPENDIX F
 
 142
 The judgment of the district court is VACATED
 
 
 143
 and the cause REMANDED for further action
 
 
 144
 not inconsistent with section IV.D. of this
 
 
 145
 opinion as to the following parcels.
 
 
 146
 Defendant Parcel Section of this
 Opinion
 Rejecting Other
 Challenges to
 Listed Parcel[6]
1. John M. Spratt, Jr. One, V, III, n. 5
 Tract No.
 6 (926)
 (Tax Map
 No.
 661"2)
 
 APPENDIX G
 
 147
 The judgment of the district court is VACATED and the cause REMANDED for
 
 
 148
 further action not inconsistent with footnote 7 of this opinion as to the
 
 
 149
 following parcels.
 
 
 150
 Defendant Parcel Section of this
 Opinion Rejecting
 Other Challenges
 to Listed Parcel[7]
1. Close Three, Y, (1004), parcel with Southern II (sp. pc.)
 Family Appliances,
 Inc. III
 as grantor, recorded in deed book 418
 at page 382, dated 5/12/71.
 Three, Y, (1004), parcel II (sp. pc.)
 with Paul Gibson as grantor, III
 recorded in deed book 481 at page 65,
 dated 3/21/74.
 Three, Y, (1006), parcels identified by
 tax map numbers:
 710 0000 003 II (sp. pc.)
 III
 732 0000 003 II (sp. pc.)
 III
 730 0000 009 II (sp. pc.)
 III
 731 0000 002 II (sp. pc.)
 III
 710 0000 004 II (sp. pc.)
 III
 
 
 151
 The judgment of the district court is VACATED pursuant to footnote 7 of this
 
 
 152
 opinion as to the following parcel.
 
 
 153
 1. Close Three, Y, (1004), parcel II (sp. pc.)
 Family
 with Curt Siefart as grantor, III
 recorded in deed book 448 at page 38,
 dated 9/20/72.
 
 APPENDIX H
 
 154
 The judgment of the district court is REVERSED and the cause REMANDED for
 
 
 155
 further action not inconsistent with section VIII of this opinion. The
 
 
 156
 following defendants were erroneously dismissed in that they claim certain
 
 
 157
 parcels not released by the judgment orders.
 
 
 158
 Defendant Parcels Remaining in this Case[8]
1. J. Max Hinson J.A. 641, Exhibit A, Tract
 numbers 27, 29
2. William O. Nisbet J.A. 778, 53 acre tract
3. Ashe Farms J.A. 494 p 2
 J.A. 776 pp 5 through 8
 J.A. 777 p 2
4. C.H. Albright J.A. 731 p 7
 
 
 
 [1]
 The historical facts surrounding the Catawbas' claim to the property in question are set forth at length in this court's first opinion and the Supreme Court's opinion on the matter. See South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986); Catawba Indian Tribe v. South Carolina, 718 F.2d 1291 (4th Cir.1983), adopted en banc, 740 F.2d 305 (4th Cir.1984), rev'd, 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986)
 
 
 [2]
 Section 15-3-340, at the time this action was brought, provided as follows:
 No action for the recovery of real property or for the recovery of the possession thereof shall be maintained unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within ten years before the commencement of such action.
 A second action for the recovery of real property shall be brought within two years from the rendition of the verdict or judgment in the first action or from the granting of a nonsuit or discontinuance therein.
 
 
 [3]
 Section 15-67-210 provides as follows:
 In every action for the recovery of real property or the possession thereof the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law. The occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title unless it appear that such premises have been held and possessed adversely to such legal title for ten years before the commencement of such action.
 
 
 [4]
 The complaint actually was filed on October 28, 1980. Therefore, the defendants had until October 28, rather than October 20, to fulfill the ten year requirement
 
 
 [5]
 The Tribe makes numerous attacks against the affidavits, but in nearly every instance it has not shown a need for a trial. We reject the Tribe's argument that certain affidavits were insufficient because they did not attach certified copies of all the documents referred to in the affidavits. The documents referred to are, in most, if not all, cases, available as public records concerning property. The Tribe has not disputed the veracity of the statements concerning the use of the property and thus have not shown the need for a trial. Also the Tribe does not contest the content of the documents referred to or even state it does not know their content. Thus, it has shown no prejudice for any non-compliance with the rule
 
 
 [6]
 The Tribe claims that a number of the affidavits contain admissions that the property described was "neither occupied, possessed nor used." We have inspected each of those affidavits and find the Tribe's argument to be without merit. When the pertinent section of each affidavit is read it is apparent that the affiant has alleged sufficient acts to establish entry upon and possession of the property
 
 
 [7]
 The district court erred in granting summary judgment as to two parcels claimed by a Close family trust. The chain of title of these tracts contained transfers of record within the ten-year statutory period. One of the parcels was transferred from Southern Appliances to the trustees on May 7, 1971 (nine years after the statute began running against the tribe in 1962 and nine years prior to the filing of the suit in 1980) by deed dated May 7, 1971 and recorded May 12, 1971 in deed book 418 at page 382. The other parcel was deeded to the trustees by deed dated March 18, 1974 and recorded March 21, 1974 in deed book 481 at page 65. The grantor thereon had been conveyed the property by deed dated May 2, 1971 and recorded May 12, 1971 in deed book 418 at page 382. Again, the dates of these transfers make it impossible for one party to have held the property for the requisite ten year period. Barring the applicability of an exception to the no-tacking rule (no exception is offered by the claimant), the ten-year requirement was not met
 The Tribe claims that the record title of another parcel, deeded to the trustees by deed dated September 20, 1972 and recorded September 16, 1972 in deed book 448 at page 38, shows that no party held the property for the requisite ten-year period. The claimants allege that Ann S. Close, who is not a party to the litigation, is the record owner of this parcel and, therefore, that parcel was not subject to the summary judgment motion. It appears, however, that summary judgment was granted as to that parcel. See Third Judgment Order, Exhibit Y (Parcel with Curt Seifart as grantor recorded in deed book 448 at page 38). Since summary judgment was not sought for that parcel, it could not have been appropriately granted. Therefore, the district court erred in granting summary judgment as to that parcel.
 The Tribe also alleges that the district court granted summary judgment as to other parcels (Tax Map Numbers 710 0000 003, 732 0000 003, 730 0000 009, 731 0000 002, 710 0000 004) for which summary judgment was not sought and as to which there was no evidence in the record. These parcels are listed in an appendix to a memorandum in support of summary judgment dated July 11, 1990. Summary judgment was granted as to those parcels in the Third Judgment Order filed July 18, 1990. It appears that the Tribe is correct that no affidavits were filed to support a motion for summary judgment as to those parcels. Therefore, with no evidence before it, the district court erred in granting summary judgment as to those parcels.
 
 
 [8]
 We are of opinion that Duke is not estopped from asserting that Crescent is its alter ego. The Tribe did not rely on any corporate separateness
 
 
 [9]
 The Tribe asserts that the district court erroneously held the six-year statute of limitations on actions for inverse condemnation applicable to Duke and Crescent's claim to the Lake Wylie Perimeter Property. We do not agree that the district court so ruled. In its amendment to the second judgment order the district court plainly held that the six-year statute applied to the Lake Wylie Dam Property and the Lake Wylie Basin Property. The order made no mention that the statute would apply to the Lake Wylie Perimeter Property and we do not read it as so holding
 
 
 [10]
 As an additional argument, the Tribe claims that a transfer by deed from a disseisor's executors to a devisee interrupts the running of the adverse possession statute and therefore certain percentage interests in property claimed by the Nisbet family were not held for the requisite period. Also the Tribe argues that the creation or termination of a trust interrupts the 10 year period. We do not reach these issues as our holding that one co-tenant can establish adverse possession for all co-tenants allows the Nisbets and other claimants to establish adverse possession as to their entire holding by establishing that one co-tenant held the property for the requisite period. For example, it appears that the Nisbet trust held an undivided interest for the entire requisite 10 year period
 
 
 [11]
 The Tribe argues that John S. Simpson moved for summary judgment as to certain parcels that were not released by the judgment orders. A review of the record indicates that summary judgment was, in fact, granted as to all parcels claimed by John S. Simpson. The Tribe's confusion stems from an apparent typographical error--Tax Map Number 600-11-02-005 became Tax Map Number 600-11-02-035 in the judgment order
 
 
 [1]
 The volume and complexity of the records describing the parcels of land in this case has prompted us to develop a system of notation whereby the reader may discern what action we have taken with respect to each individual parcel as to which summary judgment was granted. We have attempted to devise a system that strikes a useful balance between simplicity and precision
 The district court's holdings in this case are collected in the form of five
 judgment orders. We refer to these judgment orders by the words "One,"
 representing the first judgment order beginning at J.A. 848; "Two,"
 representing the second judgment order beginning at J.A. 948; "Three,"
 representing the third judgment order beginning at J.A. 960; "Amend.,"
 representing the amended second judgment order beginning at J.A. 1012; and
 "Four," representing the fourth judgment order beginning at J.A. 1019. The
 first word in a reference under this column, then, refers the reader to the
 appropriate judgment order containing the parcel at issue.
 Each judgment order is accompanied by exhibits which describe with
 particularity each parcel at issue and naming the defendant who claims that
 parcel. We reference these exhibits by using the same capital letters,
 beginning with A and proceeding alphabetically, as does each judgment order.
 The second letter in a reference in this column is the capital letter
 designating the exhibit in which the reference occurs.
 The next number or entry in a reference represents the specific tract of land
 contained in a particular exhibit. Regrettably, the exhibits employed by the
 district court do not use a uniform notation to refer to a particular parcel
 of land. Accordingly, the last number or numbers in a reference represent our
 best judgment as to the most clear and concise way to identify a specific
 parcel. Where possible we have employed tax map numbers. Less often we have
 referred to numbered paragraphs in the exhibit. Only where necessary have we
 resorted to a more lengthy description of a parcel, such as by deed book and
 page number, dates and grantors, and the like.
 The final number in a reference, in parentheses, is the Joint Appendix number
 where that reference may be found.
 As an example, the reference refers to the parcels found in paragraphs one
 through four of exhibit C to the first judgment order, appearing at J.A. p.
 
 
 [857]
 
 One, C, (857)
 p 1
 p 2
 p 3
 p 4
 
 
 [2]
 The references to the designated sections of the foregoing opinion are largely self-explanatory. As for the references to section II of our opinion, which deals with several issues relating to the sufficiency of the allegations in the defendants' affidavits, we have devised a shorthand notation for purposes of identifying which specific aspect of section II addresses the relevant objection of the Tribe
 Title of Corresponding
Notation Section of Tribe's Opening Brief
II (concl.) "Conclusory Averments of Possession"
II (sp. pc.) "Possession of Specific Parcels Not Shown"
II (tree) "Tree Farms"
II (farm) "Farming and Recreational or Social Purposes"
II (poss.) "No Actual Possession or Entry"
II (dates) "Dates of Use"
II (cont.) "Continuity of Possession"
 
 
 [3]
 The Tribe has often raised more than one type of legal challenge to any given parcel. Because we have reviewed all such objections and found them to be without merit, the district court need not rehear those challenges on remand. In the interest of clarity we shall note, where applicable, the section of this opinion wherein any other challenge to such a parcel is considered and rejected
 
 
 [4]
 See supra Appendix C n. 3
 
 
 [5]
 See supra Appendix C n. 3
 
 
 [6]
 See supra Appendix C n. 3
 
 
 [7]
 See supra Appendix C n. 3
 
 
 [8]
 Of course, because summary judgment was not granted as to these parcels they do not appear in the district court's judgment orders. Accordingly, we refer to these parcels by their description in the materials supporting the respective defendant's motion for summary judgment. Each reference is to Joint Appendix page number and paragraph or tract number or description, as appropriate